(No. 19750.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN ROMANO, Plaintiff in Error.

*Opinion filed December 20, 1929.*

HARRY J. MEYERS, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, WILLIAM D. KNIGHT, State's Attorney, GEORGE P. O'BRIEN, and A. B. LOUISON, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

John Romano was indicted, tried and convicted in the circuit court of Winnebago county of burglary and larceny. He was sentenced to the penitentiary and prosecutes this writ of error.

At about five o'clock Sunday morning, February 24, 1929, the cigar and candy store and pool hall of Hiram H. Hogan, at 1606 West State street, in the city of Rockford, was entered and cigars, cigarettes and a mint machine having a value in excess of $150 were taken. Arthur L. Murphy, a neighbor, testified that at the time in question he saw, from a window of his house, a sedan automobile facing east in front of Hogan's hall; that one man alighted from the automobile, two came from the hall, and the three men entered the automobile and drove a short distance south on the nearest intersecting street; that shortly afterwards he saw two men leave the same building carrying a parcel and proceed around the corner in the direction of the automobile, and that he immediately telephoned the police department.

Glen C. Wilkins, a police officer, riding a motorcycle about the same time, saw a man with packages in his arms

run from Hogan's store toward the automobile standing in the intersecting street. The man hurriedly entered the automobile in which two persons were seated and the car was driven down one street and then another at a high rate of speed until it skidded and came to a stop on an icy street when the men fled afoot. The officer, who had followed them, apprehended one of the three men and he was later identified as the plaintiff in error. The car was searched by the officer and he found, among other things, several boxes of cigars, several cartons of cigarettes and two slot machines. These goods and chattels were taken to the police station where Hiram H. Hogan, the proprietor of the store, later identified them as his property.

The plaintiff in error testified that shortly prior to February 23, 1929, V. M. Barbagello, a personal friend, proprietor of the Tivoli restaurant in Rockford, offered him employment as a waiter; that he arrived in Rockford by train about 8:00 P. M. on that day and immediately went to the restaurant where he worked five or six hours; that he was obliged to return to Chicago for a suit of clothes which he was required to wear as a waiter and hearing two men in the restaurant say that they were bound for that city, he inquired whether he might accompany them; that they assented and told him to meet them at 4:30 A. M. about six blocks west of the restaurant; that he reached the appointed place about fifteen minutes late and found the men waiting for him in an automobile; that he seated himself between them and after the car had gone a short distance some person began to shoot; that the car, running at high speed, skidded, the occupants jumped out and his companions ran, while he walked away, and that he soon met a police officer, who, notwithstanding his protestations of innocence, took him to the police station. The plaintiff in error denied any participation in the crime.

For the purpose of impeachment, the plaintiff in error was asked on cross-examination whether at the police sta-

tion following his arrest he did not say that he went to Rockford on February 23, 1929, with Dan Paroni in a Chevrolet automobile; that he stopped at the Tivoli restaurant because it had an Italian name; that he left there about 11:00 P. M. and met a man named Frank; that Paroni asked Frank where intoxicating liquor could be obtained and was directed to a particular place to which they went reaching there about midnight; that about an hour later they went to another place, remained there until two o'clock when they returned to the first establishment where they met two girls who accompanied them in the automobile they were driving, and that he, the plaintiff in error, left the automobile about four o'clock in the morning and walked around until he was arrested about an hour and a half later. He was further asked whether on the preliminary examination before the magistrate he stated that, on the morning in question, he arrived in Rockford from Chicago, at about four o'clock; that he was looking for South Main street, and that after he had walked three or four blocks, he saw three men running with an officer in pursuit. Plaintiff in error testified that he did not remember making these statements and that he had never seen the two men with whom he rode in the automobile before the morning in question.

V. M. Barbagello, the owner of the Tivoli restaurant, testified that he had asked the plaintiff in error to come to Rockford to work for him; that he came on Saturday, February 23, 1929, reaching the restaurant about 9:00 P. M.; that the witness instructed him to obtain the clothes required for the position and to return the following Monday for steady employment; that the plaintiff in error intended to go to Chicago by train to get his clothes but that two patrons of the restaurant bound for that city offered to take him there, and that he was at the restaurant when it was closed about 4:30 A. M., February 24, 1929.

On rebuttal, Wilkins, the police officer, testified that at the police court in Rockford, on March 2, 1929, the plaintiff in error said he came to that city with Dan Paroni in a Chevrolet automobile reaching the Tivoli restaurant about 10:00 P. M.; that he left the restaurant with Paroni, met a man named Frank of whom they inquired where they could obtain liquor; that they visited a number of places and about 3:45 A. M. took two girls in the automobile; that shortly thereafter he was directed to leave the car and did so, and that he then walked about four or five blocks, heard shots fired, saw three men running with a police officer in pursuit, and was arrested. James Chandler, another police officer, corroborated officer Wilkins' testimony.

Upon the direct examination of officer Wilkins, the State's attorney, referring to the automobile in which the stolen goods were found, asked: "Do you know to whom that car belonged?" The officer answered, "It belonged to a party in Chicago; it was a stolen car." On motion, the answer was stricken and the jury were instructed to disregard it. Complaint is made that the State's attorney, in asking the question, was guilty of such misconduct as to deprive the plaintiff in error of a fair trial. That the car had been stolen was volunteered by the witness and was not responsive to the question propounded. The State's attorney was not responsible for that portion of the answer and was guilty of no misconduct in asking the question. The court promptly instructed the jury to disregard the answer, and from the facts and circumstances in evidence it does not appear that the plaintiff in error was prejudiced by it.

It is further contended that the court erred in permitting the State's attorney to impeach the plaintiff in error on immaterial matters. This contention has reference to testimony concerning the whereabouts of the plaintiff in error at, and immediately prior to, the time the burglary was committed. With respect to these matters it was shown

that the testimony of the plaintiff in error at the trial differed from his statements at the police station and before the magistrate. The impeachment was therefore upon ma-'terial facts. It it always competent to show that a witness, even though he be the defendant, has made a statement at another time concerning material matters inconsistent with his testimony on the witness stand. *People* v. *Popovich,* 295 Ill. 491.

Counsel for the plaintiff in error asked him upon his direct examination whether he had ever been arrested and he answered in the negative. On cross-examination the State's attorney inquired whether he had been arrested in March, 1927, under the name of Patrick Russo, and again his answer was a denial of the charge. No witness was called to prove that the plaintiff in error had been so arrested. Although the subject was introduced by counsel for the plaintiff in error on the direct examination of his client, yet the question asked on cross-examination was improper and the objection thereto should have been sustained. The question, however, was not harmful to the plaintiff in error and affords no ground for a reversal of the judgment. *People* v. *Cunningham,* 300 Ill. 376.

Complaint is made that the court unduly restricted the cross-examination of the witness Hogan concerning the dissolution of a partnership which previously had existed between himself and his nephew for the conduct of a business at an address other than the one in question. Hogan had testified that he was the tenant of the building at 1606 West State street; that he owned the stock and fixtures and that he conducted the business himself. In view of this testimony, wholly uncontradicted, it was immaterial when the dissolution of a pre-existing partnership operating a business at another address had occurred. Objection to further cross-examination upon that question was properly sustained.

It is finally contended that the motion for a new trial should have been granted. The law has committed to the jury the determination of the credibility of the witnesses and of the weight of their testimony, and where the evidence is conflicting this court will not substitute its judgment for that of the jury. There was sufficient evidence in this case to convict and it cannot be said that the verdict is palpably contrary to the weight of the evidence or that the evidence is so unreasonable, improbable or unsatisfactory as to justify a reversal of the judgment on that ground. *People* v. *Kessler,* 333 Ill. 451; *People* v. *Hoffman,* 329 id. 278; *People* v. *Elmore,* 318 id. 276.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*