(No. 20012.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EARL HERBERT, Plaintiff in Error.

*Opinion filed June 20, 1930—Rehearing denied October 11, 1930.*

Louis Greenberg, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and James B. Searcy, (Edward E. Wilson, and John Holman, of counsel,) for the People.

Mr. Justice DeYoung delivered the opinion of the court:

Earl Herbert was indicted in the criminal court of Cook county for assault with intent to murder Judson B. Seaman. A jury trial resulted in a verdict of guilty and a sentence of imprisonment in the penitentiary followed. The defendant prosecutes this writ of error for a review of the record.

On January 31, 1927, Judson B. Seaman was a police officer employed by the Pere Marquette Railroad Company. About 7:45 P. M. on that day, while aboard a train carrying merchandise and as the train was passing through the railroad yard near State and Eighty-seventh streets, in the

city of Chicago, he discovered several cases of cigarettes along the track. He alighted from the caboose, crawled to the edge of the embankment to investigate and saw a man about two hundred fifty feet distant throwing cases down the embankment. The man stopped removing the cases, three shots were fired, and he approached Seaman. When he reached a point within thirty feet of Seaman, the latter arose, turned a flashlight on the man and ordered him to raise his hands. The man, armed with a revolver, came to a halt, raised his right hand, but with his left hand fired three times at Seaman. In return, Seaman fired once and attempted a second shot but his glove caught the trigger of his revolver and prevented its discharge. Seaman dropped to the ground, released the trigger, arose and fired five shots in rapid succession as the man retired down the embankment. By his flashlight Seaman was able to distinguish the features and apparel of the man. Later in the evening, Seaman and Grover J. Fleck, chief special agent of the Belt Railway Company of Chicago, placed in the caboose of another train twenty-five cases of cigarettes and two cases of rolled oats which they had found along the track. The next morning Fleck discovered a Ford sedan automobile in the same vicinity. About the same time, James Horan, a watchman employed by the Belt railway, also discovered the same automobile. He made a note of its license number and found cigar and cigarette stubs in the car.

Otto Erlanson, a police officer of the city of Chicago, arrested Herbert on February 15, 1927. The latter asked why he was taken into custody, and the officer answered that he was wanted for shooting a railroad watchman. Herbert replied that he had just returned from Canada. The officer asked him how he could prove that he had been in Canada, and he answered that he would do so at the proper time. Herbert was taken to the West Englewood police station. Seaman was called to the station and saw Herbert in a cell. Officer Erlanson had left the station before Sea-

man arrived, and when the officer returned he asked Seaman whether he was certain Herbert was the man he had seen in the railroad yard. Seaman answered that he was positive he was the man, whereupon Herbert said that Seaman was mistaken. Herbert admitted to the officer that he owned the automobile found near the place in the railroad yard where the cases of cigarettes had been strewn along the track; that he had purchased the car on installments, and that the seller had taken possession of the car because he was in default in making the payments owing upon it.

The defense rested upon the testimony of three witnesses, including the plaintiff in error. Hale Siegel, a sugar salesman, testified that he arrived in Montreal, Canada, on the 25th or 26th of January, 1927; that he met Herbert in the lobby of the Mont Royal Hotel in that city several times on succeeding days, and that Herbert was in Montreal on February 1, 1927.

Joseph Burke, a deputy weighmaster of the Chicago Board of Trade, testified that on January 31, 1927, about 4:30 o'clock in the afternoon, he met Bernard Herbert, Earl's brother, driving the latter's automobile at Eighty-seventh street and Vincennes avenue in Chicago; that they went to a saloon together, remained there over an hour and then drove to the home of the witness; that, on the same occasion, the witness borrowed money from Bernard Herbert, and that he re-paid it several days later at which time Herbert told him he had lost the car.

From the testimony of the plaintiff in error it appears that he was thirty-seven years of age; that he was in Canada continuously from January 20 until February 12, 1927; that he stopped at the Mont Royal Hotel, in Montreal, where he met several persons from Chicago, among whom was Hale Siegel; that he never owned or carried a revolver; that he was right and not left-handed; that in August, 1926, he bought a Ford sedan on deferred payments; that at the time of his departure for Canada he lived with his brother

Bernard and kept the car in the latter's garage; that three of the installments owing on the car were then overdue; that when he returned from Canada his sister-in-law told him some person had taken the car, and he found two registered letters awaiting him,—the first that the car would be sold for non-payment of the overdue installments, and the second, that the car had been sold at auction leaving a deficit still owing by him for which a bill was inclosed, and that, at the time of the trial, his brother Bernard was dead.

During the trial, counsel for the plaintiff in error made a motion to withdraw a juror and to declare a mistrial. The motion was based upon counsel's assertion that the jurors had read certain newspapers containing articles in which the plaintiff in error was called a "beer runner," reference was made to the charge in the present case, and it was observed that after nineteen postponements involving great delay, the plaintiff in error was at last forced to trial. The court denied the motion, but instructed the jury that they must ignore all mention of the defendant in newspapers; that they had been sworn to try the case only upon the evidence adduced on the trial; that there was no evidence that the defendant was connected with any other person in any unlawful business or that the number of continuances in the cause was owing to any act in his behalf, and that they should ignore all outside suggestions not only because they were harmful to a man on trial for his liberty but also because they constituted no evidence whatever in the cause. The denial of the motion, it is contended, constitutes reversible error. There is nothing in the record, save counsel's assertion, to show that the jurors read any of the articles of which complaint is made. Apparently the cautionary instruction was given by the court fully to protect the rights of the plaintiff in error, and since it does not appear that he was prejudiced by the publication of the articles, the court did not err in denying the motion to withdraw a juror and to declare a mistrial.

The next contention of the plaintiff in error is that the prosecution should not have been permitted to enter a *nolle prosequi* to the second and third counts of the indictment which charged an assault with a deadly weapon with the intent to inflict upon the person of Seaman a bodily injury. It is argued that it was not possible to determine whether the person shooting sought to kill, to inflict bodily injury or merely to scare the railway police officer. The defense was an alibi and not that the plaintiff in error was guilty of a lesser offense. The State elected to rely upon the first count which charged an assault with intent to commit murder. To sustain that charge the prosecution was required to prove such facts that if death had resulted from the assault the assailant would have been guilty of murder. (*People* v. *Browning,* 321 Ill. 559; *People* v. *Brown,* 288 id. 489). The intent to murder is an essential element of the offense, and, like any other fact necessary to constitute the crime, must be proved beyond a reasonable doubt. Specific proof of the intent, however, is not essential, for it may be established by evidence of the attending facts and circumstances. (*People* v. *Haskins,* 337 Ill. 131; *Crowell* v. *People,* 190 id. 508; *Crosby* v. *People,* 137 id. 325; *Weaver* v. *People,* 132 id. 536). It was Seaman's duty to protect property in the custody of his employer, the railway company. If, upon discovering a person stealing such property, he ordered him to raise his hands and the latter responded by shooting at the officer, the inference is permissible that the offender did so for the purpose of killing him. The law does not contemplate that a defendant shall be found guilty of a lesser crime than an assault with intent to commit murder, upon proof, beyond a reasonable doubt, of an assault with malice aforethought of a character likely to cause death, or where the facts show a reckless or total disregard of human life. (*Crowell* v. *People, supra*). The jury were instructed that, in order to convict, the prosecution was required to prove beyond a reasonable doubt not

only an overt act but also the intent charged in the first count of the indictment. It may properly be presumed that if the jury had not believed the plaintiff in error guilty of assault with intent to commit murder, they would have found him not guilty of that charge irrespective of the presence or absence of the second and third counts. The entering of a *nolle prosequi* to those counts was not erroneous.

It is further contended that hearsay testimony was admitted in evidence. The complaint is directed first, against Seaman's identification of the plaintiff in error at the police station; and second, against the conversation between officer Erlanson and the plaintiff in error with respect to the purchase, ownership and disposition of the Ford automobile found near the scene of the crime. The first was necessarily in the presence and hearing of the plaintiff in error for he told Seaman at the time that he was mistaken. So far as the second is concerned, the testimony of the plaintiff in error on the trial was an amplification of what he had told the officer at the police station. The testimony was properly admitted. *People* v. *Dean,* 308 Ill. 74.

Upon denying the motion for a new trial, the court remarked that, while the testimony respecting identification was unsatisfactory, yet the finding of the automobile connected the plaintiff in error with the offense, and it is argued that to infer guilt from the finding of the car three blocks from the scene of the shooting twelve hours after it occurred was the drawing of an inference of guilt from an inference, a process, it is said, not only not permissible but wholly without justification. The record does not justify the conclusion that the court believed the evidence of guilt was confined to the discovery of the automobile near the scene of the crime. The question whether the plaintiff in error was guilty of the offense charged was one of fact to be determined by the jury from a consideration of all the facts and circumstances shown by the competent evidence. The presence of the unoccupied automobile, the property of

the plaintiff in error, in an open space near the place where and shortly after the crime was committed and at a considerable distance from the home of the plaintiff in error was a circumstance to be taken into consideration with the other evidence in determining the issue presented. (*People* v. *Swift,* 319 Ill. 359). This circumstance, with the other facts and circumstances in evidence, afforded a proper basis for an inference, and was not, as argued, the drawing of one inference from another.

The final contention is that the evidence was insufficient to convict. The railway police officer's identification of the plaintiff in error was positive. The defense was an alibi. One of the witnesses called by the plaintiff in error testified that the latter's brother drove his automobile on the evening of the shooting. The plaintiff in error claimed that, during his absence in Canada, the car had been taken from him for non-payment of certain matured installments of the purchase price and that a sale of the car at public auction followed. These facts, he testified, appeared from two registered letters which he had received. The letters, however, were not produced, nor did he account for them. The law has committed to the jury the determination of the credibility of the witnesses and of the weight of their testimony, and where the evidence is conflicting this court will not substitute its judgment for that of the jury. There was sufficient evidence in this case to convict and it cannot be said that the verdict is palpably contrary to the weight of the evidence or that the evidence is so unreasonable, improbable or unsatisfactory as to justify a reversal of the judgment on that ground. *People* v. *Romano,* 337 Ill. 300; *People* v. *Kessler,* 333 id. 451; *People* v. *Hoffman,* 329 id. 278; *People* v. *Elmore,* 318 id. 276.

The judgment of the criminal court of Cook county is affirmed.