(No. 22852.
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EMIL GLEITSMANN, Plaintiff in Error.

*Opinion filed June 14, 1935—Rehearing denied October 4, 1935.*

Northup & Beardsley, and Harry J. Meyers, for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, J. J. Neiger, and A. B. Dennis, (Edward E. Wilson, Henry E. Seyfarth, and John T. Gallagher, of counsel,) for the People.

Mr. Justice Jones delivered the opinion of the court:

A writ of error was sued out by Emil Gleitsmann to review a judgment of conviction in the criminal court of Cook county for the crime of manslaughter by abortion.

Mary Colbert was an unmarried woman twenty-three years old and had been keeping company with Edward Detman. According to the testimony of Detman he accompanied her on March 15, 1933, to the office of the defendant, a licensed practicing physician. Detman told defendant Miss Colbert was pregnant and that he wanted her relieved. After a fee was agreed upon, the defendant, in the presence of the witness, made a vaginal examination and thereafter inserted an instrument into her womb. He then placed some cotton containing a brown medicine in the duct. Miss Colbert returned to defendant's office with Detman about a week later, but the witness remained in the outer office. She became sick on March 21, 1933, and died four days later. Dr. Samuel A. Levinson, coroner's physician, testified he conducted an autopsy and discovered certain physi-

cal conditions, which he described with considerable minuteness and then gave his opinion that deceased had been pregnant three or four months previous to her death and had died as a result of a criminal abortion. He did not testify to the existence of any lacerations, perforations or abrasions, yet he said that the abortion had been performed by instrumentation.

Annie Collunden, an aunt of Miss Colbert and with whom the latter lived, testified that a few days before Miss Colbert's death she asked that the defendant be called to see her. Mrs. Collunden complied with this request and the defendant came and administered treatment. When he was about to leave, Mrs. Collunden said, "Doctor, there has been something done to that girl." He replied, "Yes; they get in trouble; they come to me and I help them out."

Frank Donahue, a police officer, stated that he went to the police station after the defendant had been taken into custody and had a conversation with him, and during that conversation he asked the defendant if he had inserted any instrument into the vagina of the deceased, and that the defendant replied, "Once in a while." The witness also testified that the doctor admitted he had used a probe but that it had been broken up.

The defendant denied he had performed an abortion or had inserted any instrument in the deceased's vaginal cavity for any such purpose. He testified that Miss Colbert came to his office with Detman, who claimed to be her husband, and that Detman said she was in great pain and something had to be done quickly. The defendant made a hasty examination, which did not disclose pregnancy. His conclusion was that she was suffering from septic blood poisoning and had peritonitis. He gave her a treatment to alleviate pain and told her it would take a month to get rid of the poison. She returned to his office several times thereafter for treatment and he visited her at her aunt's house, where he treated her. Three witnesses

testified to his good reputation for truth and veracity and for being a law-abiding citizen. He denied having made the statements attributed to him by Mrs. Collunden and the police officer.

It will be seen that the conviction rests largely upon the testimony of the witness Detman, an accomplice. Dr. Levinson testified only to physical conditions revealed at the autopsy and gave his conclusions based upon observations made at that time. The testimony of Mrs. Collunden does not necessarily lead to an inference against the defendant. It contains no reference to an abortion, and it is conceded that the purpose of his visit to her house was to give assistance to Miss Colbert. Since no one contends the defendant inserted an instrument into the decedent more than once, we therefore make no comment upon the reasonableness or unreasonableness of the police officer's testimony.

Although Dr. Levinson testified that in his opinion the abortion was produced by means of instrumentation, he did not testify to a single fact which would support the opinion that the abortion, if one was committed, was brought about by an instrument. It was error to permit him to express his opinion that Miss Colbert came to her death from a criminal abortion. In *People* v. *Rongetti,* 338 Ill. 56, the evidence showed that the posterior fundus of the uterus of the deceased woman had a punctured wound about the size of a fountain pen. A coroner's physician was permitted to testify that death was due to an abortion. This court held that where the evidence is conflicting as to whether or not any operation was performed upon the deceased, an expert witness should not be permitted to testify that the deceased came to her death as the result of an abortion. It is an error of even greater prejudice to the defendant to permit a witness to testify that death was the result of a criminal abortion. Whether there was an abortion at all and whether the abortion was

criminal are the ultimate facts which the jury was selected to determine, and a witness cannot be permitted to assume that function.

It is contended that the defendant is not in a position to complain of the error because he made no objection to the testimony and no motion to exclude it. If it were not for other errors in the case we would be considerably persuaded by this argument, but in view of the probability of another trial we feel it our duty to call attention to this testimony. The defendant is entitled to a fair trial in all events, and it must be apparent to everyone that the testimony as to the ultimate conclusions of the witness Levinson was exceedingly prejudicial to the defendant.

Where the prosecution produces the testimony of one who claims he is an accomplice, the trial court cannot avoid the settled rules of law which demand that the jury be instructed as to the tainted character of his testimony. In this case the witness Detman admitted he was the instigator of the alleged crime, that he had employed the defendant to commit it, and that he had been a like offender on a previous occasion. The law discredits the testimony of such a witness. (1 Wharton on Am. Crim. Law, sec. 784.) It looks upon it with suspicion, and it is the duty of a trial court to instruct and advise the jury of its unreliable character. Of course, if the jurors are convinced of the truth of the testimony given by the accomplice they must then accept it as true and give it the same weight in arriving at a verdict as they would give to the testimony of any other witness upon whom they think they can safely rely. In *Hoyt* v. *People*, 140 Ill. 588, this court quoted with approval 1 Phillips on Evidence, as follows: "Accomplices, upon their own confession, stand contaminated with guilt. They admit a participation in the very crime which they endeavor, by their evidence, to fix upon the prisoner. They are sometimes entitled to even a reward upon obtaining a conviction, and always expect to earn a pardon."

In this case the defendant had the right, and should have been granted the privilege, of showing the material facts and circumstances surrounding the witness Detman which might induce his testimony. In such an effort counsel for the defendant, on cross-examination of Detman, showed that the latter had gone under several assumed names; that he had been married seven years and had two children; that he was responsible for the pregnant condition of Miss Colbert; that on the date of her death he was arrested and taken into custody; that he testified at the coroner's inquest, and that he had been released from custody. He was then asked the direct question if he had not denied at the coroner's inquest that he was responsible for her pregnant condition. An objection interposed to that question was sustained. Other questions of like intendment were objected to and sustained. These rulings constituted a serious curtailment of the defendant's rights. Certainly it was proper for him to show, if he could, that when the witness Detman was under oath before the coroner he had denied responsibility for Miss Colbert's pregnancy. It is a fundamental right in any case to show that a witness has made statements out of court in conflict with his testimony on the stand. (1 Wharton on Am. Crim. Law, sec. 817; *People* v. *Romano,* 337 Ill. 300.) It was important to the defendant that he be given an opportunity to impeach the testimony of Detman. He would be permitted to show that the witness had been released from custody, that no indictment had been returned against him, and that he was not threatened with or in danger of a trial for complicity in the crime. *People* v. *Hrdlicka,* 344 Ill. 211; *People* v. *McKinney,* 267 id. 454.

The defendant asked the court to instruct that "the jury are not to pass upon the testimony of an accomplice as they do upon the testimony of other witnesses, but they are to consider it subject to grave suspicion," etc., but the instruction was refused and an instruction was given which

told the jury that while the testimony of an accomplice is liable to grave suspicion, the credibility of an accomplice is for the jury to pass upon as they pass upon the credibility of any other witness. The given instruction is clearly erroneous. It is not true that the credibility of an accomplice is to be passed on the same as that of any other witness. It is depreciated by the law, and the jury must look upon it with suspicion and should not convict on it, alone, unless convinced of its truth. They do not test it as they would that of other witnesses who are not likewise discredited.

The court also instructed the jury that if they believed, beyond a reasonable doubt, the defendant aided, abetted and encouraged the alleged abortion operation in any manner he was guilty as charged in the indictment. There was no evidence tending to prove he assisted anyone in the alleged illegal abortion and the instruction should not have been given.

The following instruction was given: "Edward Detman is one defined by law to be an accomplice to the crime charged in the indictment." An accomplice is always a *particeps criminis* and is concerned in the commission of the crime. With that definition in mind, it is clear that the instruction assumes that he was an accomplice of the defendant in the commission of the crime charged. It was misleading and prejudicial, and while one of the tendered instructions of the defendant was of similar import, this error should be guarded against in another trial.

It appears to us that the defendant was deprived of a fair trial because of the errors we have pointed out. Under the doctrine expressed in *People* v. *Gordon,* 344 Ill. 422, convictions relying principally upon the testimony of an accomplice will not be sustained unless the record is substantially free from prejudicial error.

The judgment is reversed and the cause is remanded for a new trial.              *Reversed and remanded.*