(No. 27951.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT ALEXANDER WILSON, Plaintiff in Error.

*Opinion filed September 19, 1944.*

MARION C. COOK, and LESLIE A. CRANSTON, both of Du QUOIN, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and RALPH L. MAXWELL, State's Attorney, of Nashville, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Robert Alexander Wilson, was indicted in the circuit court of Washington county, charged with burglary and larceny committed on May 27, 1942. He pleaded not guilty and was tried before a jury. A motion for a directed verdict of not guilty was denied. He

was found guilty. Motions for judgment notwithstanding the verdict and for a new trial then followed. These motions were also denied, and this writ of error has been sued out to review the judgment.

The evidence shows that about 3:00 o'clock A. M., on May 27, 1942, the Clover Leaf Tavern in Washington county, located adjacent to the city of Nashville, 1500 feet west of the Missouri & Illinois railroad, was forcibly entered and quantities of bottled whiskey and a carton of cigarettes were taken therefrom. William Hoffman, the owner, and his uncle, Louis Stark, resided in the same house adjacent to and about a hundred yards from the tavern. Stark testified that about three o'clock in the morning he heard a noise at the tavern and called the sheriff; that in a few minutes a car drove up and he thought it was the sheriff; that he went out there and some fellow had just put a case of whiskey in the back of his car; that the man then ran from the car and was not seen any more, as it was foggy; that there were three more cases of whiskey and a carton of cigarettes at the back door outside the tavern; that the whiskey had been taken from the shelf of the tavern; and that the car was a blue Hudson coupe.

According to the undisputed evidence, the tavern had been entered through a window which had been pried open with a screw driver. The sheriff arrived shortly after the man ran from the Hudson coupe. He and his deputy found the rear compartment of said coupe open, a case of whiskey in the compartment, the lights of the car dimmed, and the motor running. The car also contained articles of clothing, some shoes, a set of Missouri license plates, and a billfold containing a selective service registration card, a Missouri driver's license, an automobile title certificate, a receipt for a Kentucky license, and other papers containing the name, Robert Alexander Wilson. Kentucky license

plates were on the car. The sheriff also found, in the Hudson coupe, a flashlight and a screw driver. He placed the screw driver in the marks made in the window and it fitted perfectly in the mark or crease.

The tavern was located about three and one-half miles from Kemp Siding, a flag station on the Missouri & Illinois railroad. On the morning of May 27, the passenger train due there at 10:25 A. M. stopped and took on a passenger, as shown by the conductor's record, but the conductor could not remember whether it was a man, woman, or child. William Reuter and Melvin Voelmer, who were members of a bridge gang working on the railroad and who had pulled in with their handcar on a switch, waiting for the passenger train to pass, both testified that a man boarded the train that morning; that they first saw him, when they came in on the switch track, "ducking" behind a pile of dirt and afterward saw him get on the train. They did not remember seeing him flag the train, although the train stopped at that station only on signal. Neither could describe his size or appearance nor remember whether he was old or young. One of these witnesses testified that he had on Sunday clothes and a hat. The other did not remember whether he had on a suit or overalls, but testified that he was wearing a hat.

Otha M. Cagle, who was operating a loading rack for Magnolia Oil Company at Kemp Siding that morning, testified that he saw and talked with the man who boarded the 10:25 A. M. train; that he first saw him when the witness walked from his loading rack to the top of one of the tank cars; that the man was standing on the opposite side of the car; that he watched the man walk past the string of cars on the main line about 200 yards; that he paid particular attention because just a few days before that he had notice to look out as there might be some sabotage; that he walked out where the man was and

asked him what his business was; that the man said he was bumming a ride and wanted to know when the next train went by. The witness told him there would be no freight but there would be a passenger train about 10:30. The two then talked off and on about an hour and a half or two hours. The witness positively identified that man as the defendant then on trial. He described the man as nicely dressed wearing a gray hat, but his trousers were wrinkled from the knees down, the press being gone below the knees. He had previously identified defendant, in the sheriff's office, as the man he had seen at Kemp Siding and who had boarded the passenger train on the morning of May 27, 1942.

When the sheriff and his deputy had inspected the Hudson coupe and its contents they had it taken to the Washington garage in Nashville and placed in storage. Sometime between the night of the burglary and October, 1942, and while the automobile was still in custody of the sheriff in the Washington garage, plaintiff in error came to the garage, claimed the automobile as his and took some of the clothing, and later claimed and took from the garage the automobile in question and was in possession of and driving it afterward. On August 2, 1942, he was arrested in West Frankfort and later posted bail. No evidence was offered in plaintiff in error's behalf at the trial. The above-related facts were undisputed and, with the reasonable inferences deducible therefrom, constitute all the evidence bearing upon the identity and guilt of the defendant.

Only two points are raised in the assignment of errors. It is first contended that there is no evidence connecting the defendant with the charges in the indictment. It is true there is no direct evidence that he forcibly entered the tavern that was burglarized. However, the *corpus delicti* was conclusively proved. The proof connecting plaintiff in error was entirely circumstantial, surrounding his owner-

ship of the Hudson coupe, the clothing and documents found therein, the presence of two sets of license, a Missouri driver's license, and the screw driver that fitted perfectly in the crease or mark on the window that had been pried open. Plaintiff in error made claim to the automobile, with its contents, and certainly the automobile and contents could not have been the property of any person other than plaintiff in error. They were all found at the scene of the crime, including a screw driver which fitted perfectly in the marks made on the window at the place where the tavern was entered. Another strong circumstance was the positive identification of plaintiff in error by the witness Cagle, as being the man who boarded a passenger train at Kemp Siding, a few hours after the burglary. This station was about three and one-half miles south of the tavern burglarized where plaintiff in error's car was found. Plaintiff in error told witness he was bumming a ride and wanted to know when the next train went by. Witness told him there would be no freight train but there would be a passenger train about 10:30.. The two men talked off and on about an hour and a half. Plaintiff in error was described as nicely dressed but that his trousers were wrinkled from the knees down. These were all circumstances presented to the jury.

Circumstantial evidence is legal evidence, and where it is of so strong and convincing a character as to satisfy the jury of the guilt of the defendant beyond a reasonable doubt, it is the duty of the jury to act upon it and find the defendant guilty, and such verdict must be sustained. (*People* v. *Hart,* 323 Ill. 61.) A careful scrutiny of the record fails to convince this court that the jury was not warranted in finding the defendant guilty. The presence of defendant's unoccupied automobile at the place where, and at the time when, the burglary was committed, was a circumstance to be taken into consideration with other evi-

568

dence in determining the issue as to his connection with the crime. *People* v. *Herbert,* 340 Ill. 320.

It is contended that the court erred in giving the instructions as to the form of the verdict because the forms submitted were based upon finding defendant guilty "as charged in the indictment." This contention merits very little consideration. This court, in the case of *People* v. *Surace,* 295 Ill. 604, said: "The simple, plain form of verdict, 'We, the jury, find the defendant guilty in manner and form as charged in the indictment, and we find the value of the property stolen to be $1500,' etc., can rarely be improved upon by court or jury by the adding of useless and unnecessary words, and such form of verdict is always correct and easily given." The court did not err in giving the instructions as to the form of the verdict.

There appearing no reversible error in the record, the judgment and sentence of the circuit court is affirmed.

*Judgment affirmed.*