(28900.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HERBERT SMITH, Plaintiff in Error.

*Opinion filed September 19, 1945.*

AARON H. PAYNE, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH A. POPE, all of Chicago, of counsel,) for the People.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Herbert Smith, was indicted and tried in the criminal court of Cook county for the murder of Nural Smith. He entered a plea of not guilty, waived trial by jury and, at the close of all the evidence, was found guilty of murder as charged in the indictment. He was sentenced to the penitentiary for a term of fourteen years. Motion in arrest of judgment and for a new trial was overruled and the defendant was sentenced accordingly.

Numerous errors are assigned but those argued group themselves in four questions: (1) The court erred in its ruling upon the evidence; (2) the court erred in failing

to enter a finding within a reasonable time after the close of the case; (3) the evidence is not sufficient to support the finding as a matter of law; (4) the evidence does not prove the defendant guilty beyond a reasonable doubt.

The facts and circumstances as shown by the evidence are as follows: Sometime after midnight of July 23, 1944, the defendant entered the Spot Tavern, located on the northeast corner of Forty-third street and Evans avenue, in the city of Chicago. At the time he entered the tavern he was accompanied by Robert Finney, Clover Lee, Edward Johnson and a man by the name of Green. He remained in the tavern for several hours with friends, among whom were Leona Williams, her husband Charles Williams, her sister Myrtle Ledbetter and one Green. The tavern was crowded and when the defendant went to the bar to purchase a drink for a member of his party he accidentally bumped into the deceased which resulted in considerable argument, and, as the defendant stated, the deceased drew his knife. The defendant returned to his friends and related what had occurred and was told to go back to the deceased and tell him to go outside and put his knife down and fight. This the defendant did and a further argument followed. No blows were passed, however, and the defendant shortly thereafter left the tavern accompanied by Waddell Hudson and a woman by the name of Luberta Pettigrew. After leaving the tavern the three entered defendant's car, which was parked in front, drove a couple of blocks where the defendant opened the trunk of his automobile, got his gun, placed it in his shirt and returned with the same parties to the tavern which by this time had closed. He talked to some people there and was told that the deceased had boarded a streetcar going in a westerly direction on Forty-third street. He then, in company with Waddell Hudson and Luberta Pettigrew, pursued the streetcar and boarded the same at Forty-third street and Vincennes avenue, which is a distance of some

seven or eight blocks from the tavern. The defendant stated to the police: "When we got there the trolley was off the streetcar and it was dark inside. We knocked on the door, Waddell Hudson and I, when the door opened we walked in the streetcar. We didn't have the guns in our hand at the time. I had mine under my shirt and I don't know where Waddell had his. I walked up to the deceased and said 'I want you to get off, you owe the young lady and myself an apology.' He then pulled a knife, then I went to get my pistol but he knocked it out of my hand onto the floor. As I went to pick it up I heard a shot. At that time the streetcar was full of people. We got off and got in my car. I gave my pistol to Luberta Pettigrew and we turned around and went back east on Forty-third street." Several witnesses testified as to what occurred in the streetcar and there was some dispute as to who actually fired the shot that killed the deceased.

It is first contended that the court erred in its ruling upon certain rebuttal testimony given by one Marshall J. Carroll, a police officer, who was called as a rebuttal witness over the objections of the defendant. George Venitis, a witness who was present at the scene of the alleged crime, was called as a witness for the defendant and testified that he did not see the defendant, Herbert Smith, with the gun in his hand and that he did not see him; that it was a different guy who had the gun in his hand, a real heavy-set fellow with a short neck. After he had so testified in chief, he was cross-examined by the People and was interrogated as follows: Q. "Isn't it a fact that you told officer Marshall Carroll at the inquest that the defendant seated here [indicating defendant] is the man who did the shooting, but that you didn't want to involve yourself?" The witness answered, "I didn't see the man. What inquest?" Q: "You never told him that?" A. "No, I never saw him. I don't know what inquest you are talking about." Officer Carroll was called as a rebuttal witness in behalf of the

People and testified as follows: "My name is Marshall J. Carroll. Live at 4846 West Adams street and am a police officer of the city of Chicago assigned to the Detective Bureau. I attended the inquest in connection with the shooting and death of Nural Smith at Forty-eighth and Wabash about the 9th of August in the court room on the second floor." This question was then asked of the police officer: "Did George Venitis at that time say that this defendant was the person who did the shooting but he did not want to involve himself in the matter?" Objection was made which was overruled and exception noted and the witness answered, "As near as I can remember when George Venitis finished his testimony at the inquest he came back and sat down and his words were that 'You have got the right man. He did the shooting.'"

Counsel for the defendant contends that this testimony was inadmissible; that it was not made in the presence of the defendant; that the witness Venitis had testified under oath at the inquest and at the trial where the said witness was confronted with the defendant and anything said by the said Venitis, or anything alleged to have been said by him, outside of the presence of the defendant and not under oath was highly incompetent and should have been stricken upon motion of the defendant. He cites the case of *People v. Scattura,* 238 Ill. 313, contending that when, in answer to a proper question, a witness gives testimony which is incompetent, it is the duty of the court, on the motion of the party against whom the testimony is given, to exclude it. There can be no doubt that it is the duty of the court to exclude such testimony when it is incompetent, however, we do not think that is the situation here. It is always competent to show that a witness, even though he be the defendant, has made a statement at another time inconsistent with his testimony on the witness stand. (*People v. Romano,* 337 Ill. 300; *People v. Popovich,* 295 Ill. 491.) We think the statement made here by the witness

at another time was one concerning a material matter inconsistent with his testimony on the witness stand and, having been asked if he had made such statements, which he denied, it was proper to show, in the way of rebuttal, that such statements inconsistent with his testimony had been made. The testimony of the rebutting witness was proper and the court did not err in overruling the objection.

Defendant further contends the court erred in failing to enter a finding in this cause within a reasonable time after all the testimony had been taken and the case closed by both the prosecution and the defense. Defendant cites no authority in support of this proposition and the record discloses the postponement was for the purpose of permitting the judge to consider the evidence before his verdict; that from his summation it appears careful consideration was given, which an analysis reveals was rather favorable to the defendant in that respect and did not deprive him of any substantial rights.

It is next contended by the defendant that the evidence is not sufficient to support the finding as a matter of law and that the evidence does not prove the defendant guilty beyond a reasonable doubt. These points will be considered together. It is urged by the defendant that the trial judge in his opinion stated that Joseph Brown, the only witness who testified the defendant shot the deceased, was in error as to a number of things with reference to the streets and distance that the car traveled and, in some respect, the direction in which the car was traveling; and, further, that the four men who the motorman and the two passengers, the milkman and the other one, said boarded the car, were boarding the car for the purpose of doing violence to and punishing the deceased; that he thought they were acting in concert. Counsel for the defendant states that this clearly indicates the court felt called upon to discredit the State's chief witness and that the court was convinced that the defendant did not kill the

deceased but that the deceased was shot and killed by some unknown person whom the court presumed or surmised to be acting in concert with the defendant. We do not think the language of the court is so restricted. The fact that the court, in his summation, stated he thought they were acting in concert and boarded the car for the purpose of doing violence to and punishing the deceased, hardly justifies the position that the court discredited the witness Joseph Brown, or was convinced that the defendant did not kill the deceased or that the deceased was shot and killed by some unknown party. It is true the witness Brown was in error as contended by counsel for the defendant and, as shown by the deductions of the court, as to matters with reference to the street and distance the car traveled. He was, however, clear and positive in his testimony that the defendant fired the shot that killed the deceased.

The defendant, in assuming the court found the defendant guilty because he was acting in concert with others, cites the case of *People* v. *Dalton,* 355 Ill. 312, and *People* v. *Hrdlicka,* 344 Ill. 211. The distinguishing feature of the *Dalton case* over the case at bar is that in the *Dalton case* the defendant, though present, did not, at the time of the killing, in any way participate, so that it might be said he either aided, abetted or assisted in the commission of the crime. In the instant case the defendant admitted he had difficulty with the deceased; that after the deceased left the tavern he went several blocks, secured his pistol, proceeded to follow the streetcar, boarded the car in company with one Waddell Hudson with his revolver in his shirt, and accosted the deceased; that the deceased pulled a knife and as he went to get his pistol it was knocked out of his hand upon the floor at which time the shot was fired. We think he was participating in such a way that it might be said he either aided, abetted or assisted in the commission of the crime. (*People* v. *Marx,* 291 Ill. 40; *Peo-*

*ple* v. *Richie,* 317 Ill. 551.) The *Hrdlicka case* cited con-
cerned an indictment charging that during the canvass of
the votes cast at a special election, in the twenty-seventh
precinct of the thirty-fourth ward, in the city of Chi-
cago, Hrdlicka, with others, willfully and fraudulently
changed and altered certain ballots and certain mark-
ings placed on the ballots by the electors. In that case
the plaintiffs in error offered an instruction as to the
weight of the testimony to be given an accomplice, which
was refused by the court, and it was contended this was
error. This instruction was applicable and should have
been given if one Grysh, who was indicted with the plain-
tiff in error but after telling his story to the State's Attor-
ney was released upon his own recognizance, was an ac-
complice. The record, however, in that case showed that
Grysh did not know of any design upon the part of plain-
tiff in error Hrdlicka, to change any ballot or ballots until
he saw him do so, and the court said: "The knowledge
that a crime is being or is about to be committed cannot
be said to constitute one an accomplice nor can the conceal-
ment of knowledge or the mere failure to inform the offi-
cers of the law when one has learned of the commission of
a crime. (1 R.C.L. 157.) It cannot be said that Grysh
aided, abetted or assisted in the commission of the crimes.
They are affirmative in character. It is not sufficient that
there is a mere negative acquiescence not in any way made
known to the principal malefactor. (*White* v. *People,* 139
Ill. 143; *Lamb* v. *People,* 96 id. 73; *White* v. *People,* 81
id. 333.) From the foregoing it is clear that regardless
of whether Grysh by making a false return, and thus con-
cealing the crime, became an accessory after the fact, he
was not an accomplice, could not have been indicted with
plaintiffs in error as a principal, and it was not error to
refuse to give said instruction." It can readily be seen, in
that case, that Grysh did not aid, abet or assist in the
commission of the crime but merely acquiesced not in any

way made known to the principal malefactor. *People* v. *Hrdlicka,* 344 Ill. 211.

It will be observed the *Hrdlicka case* presented an entirely different situation from the facts in the case at bar. Here, by defendant's own admission, he, in company with one other at least, followed the streetcar in which the deceased was riding, and, both being armed, entered the car, and defendant engaged in a struggle with the deceased; that, according to defendant's testimony, he was attempting to draw his gun when it was knocked from his hand, and some person, whom he had no knowledge of, fired the shot; that he was already engaged in an altercation with the deceased at the time the shot was fired. It is true that mere presence is not sufficient to constitute one a principal unless there is something in his conduct showing a design to encourage, incite, or in some manner aid, abet, or assist the assault. Of course, an innocent spectator is not criminally responsible because he happens to see another commit a crime, but if the proof shows that a person is present at the commission of a crime without disapproving or opposing it, it is competent for the jury to consider this conduct in connection with other circumstances and thereby reach the conclusion that he assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the same. (*People* v. *Cione,* 293 Ill. 321; *People* v. *Marx,* 291 Ill. 40.) Under this holding and the authorities cited, we do not think the trial judge, taking into consideration the presence of the plaintiff in error at the scene of the crime, in company with an armed confederate, both following the deceased, and all the circumstances surrounding this assault which resulted in the killing of the deceased, was far amiss in his statement that the defendant was acting in concert with others. Regardless, however, of the exact interpretation to be placed upon certain language of the trial judge, in his summing up of the evidence, he found the defendant

guilty and the question is presented as to whether or not he was proved guilty beyond a reasonable doubt.

The evidence, as shown by the record, could hardly have warranted the court in coming to any other conclusion than that the defendant was guilty as charged in the indictment. The facts that the defendant left the tavern where he had an altercation with the deceased, drove a couple of blocks, opened the trunk of his automobile, got his gun, placed it in his shirt, returned with Waddell Hudson, found the deceased had left the tavern, pursued the streetcar with Waddell Hudson, both being armed, caught up with it, boarded same and accosted deceased, who, as defendant claimed, knocked his pistol from his hand, at which time the shot was fired, in addition to the positive identification by a witness sitting on the streetcar who testified he saw the defendant shoot the deceased, were such facts and circumstances as to prove the defendant guilty beyond a reasonable doubt. Further, the rule is well settled that the credibility of witnesses in a case tried before the court and the determination of the weight to be accorded to their testimony, are for the trial court. The trial judge who saw and heard the witnesses testify has an opportunity to observe their conduct and demeanor while testifying and is, therefore, in a better position to weigh their testimony than is a reviewing court. Where the evidence is merely conflicting this court will not substitute its judgment for that of the jury or the trial court. *People v. Holub,* 382 Ill. 571; *People v. Bolger,* 359 Ill. 58; *People v. Fortino,* 356 Ill. 415; *People v. Mangano,* 356 Ill. 178; *People v. Arbuthnot,* 355 Ill. 577; *People v. McPheron,* 354 Ill. 381; *People v. Herbert,* 340 Ill. 320; *People v. Yates,* 339 Ill. 421; *People v. Martin,* 304 Ill. 494.

The judgment of the criminal court is therefore affirmed.

*Judgment affirmed.*