**People of the State of Illinois, Plaintiff-Appellee, v. Timothy DeBerry, Defendant-Appellant.**

**Gen. No. 49,952.**

First District, Third Division.

June 2, 1966.

Kenneth S. Broun, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and George Samels, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Timothy DeBerry and Anthony Monsour were indicted for the crime of armed robbery. Monsour pleaded guilty. DeBerry pleaded not guilty, was found guilty by a jury and after a hearing in mitigation and aggravation

was sentenced to 30 to 50 years in the penitentiary. The sentence was to run concurrently with another sentence previously imposed in a different case by another judge.

This appeal is by DeBerry only. He contends that he did not receive a fair trial because of remarks made by the trial court and the exclusion of certain evidence allegedly bearing on the credibility of the only eyewitness to the robbery, Kenneth Vinyard.

Vinyard worked at a gas service station located on the south side of Roosevelt Road in Forest Park, Illinois. On November 28, 1962, at approximately 5:15 a. m., he was measuring the gasoline in the storage tanks in front of the station when a man approached him from a used-car parking lot east of the station. He said he had run out of gas. Vinyard replied he would take care of him as soon as he finished measuring the tank. After completing the job, Vinyard went into the office and the man followed. As Vinyard started to pick up a gas can the man said, "Don't look around, this is a stickup." He had a gun in his hand and told Vinyard to go into the back room. In the back room he took currency from Vinyard's pockets and his coin changer, a total of $61.94. A few seconds after the robbery Vinyard heard an automobile start and saw it make an east turn on Roosevelt Road.

There were 25 fluorescent lights and spotlights outside the station and three big fluorescent lights inside. Vinyard talked to the man face to face when he was first approached, while he was with him outside and when they went in the back room. He saw the gun after he had been told it was a stickup and again while his money was being taken. Vinyard later identified De Berry as the man who robbed him and identified the gun used in the holdup.

Forest Park police officers Richard Triebes and Edward Schulz were cruising in a squad car in an easterly

direction on Roosevelt Road just west of the gas station when they saw an automobile, a green 1960 Pontiac with its lights off, make a wide, fast, screeching turn into Roosevelt Road a short distance east of the gas station. After it went a little way its lights were turned on.

The officers were about to chase the car when they saw Vinyard running out of the office. They pulled into the station momentarily, spoke to him briefly and then started in pursuit of the car that had sped away a few seconds before. As they reentered Roosevelt the car was out of sight. They speeded to Harlem Avenue, three blocks east of the service station, and, to the north on Harlem, they saw the four taillights of the Pontiac. There were no other cars on the street. They sped after the Pontiac at 90 miles an hours. It turned right onto a ramp entering the Eisenhower Expressway. The police car followed. Five hundred feet separated the cars as they entered the expressway.

For the first time the officers made known their presence and purpose. They turned on the squad car's red-flashing lights, sounded its siren and played its spotlights on the car ahead. They saw two men in the car which accelerated as the lights were flashed upon it. At one time the car pulled over to the shoulder of the road and slowed down but then took off again. As the chase continued a gun, paper money, and what looked like a coin changer were thrown from the right side of the fleeing vehicle. When they were about one and a half car lengths behind, one of the officers fired a shotgun blast at the pavement beneath the pursued car; it then came to a stop.

The men were ordered out with their hands up. De Berry emerged from the right-hand side and Monsour from the driver's side. DeBerry answered the description given by Vinyard and had on the clothing described by him. The men were held at gunpoint until help came

from Chicago and Oak Park police. After they were taken into custody the officers searched the expressway and found a .38 caliber snub-nose revolver, two unfired .38 caliber shells, $31.00 in singles, a five-dollar bill and $2.75 in quarters and half dollars. The coin changer was not found.

At the police station Vinyard identified DeBerry as the one who had robbed him. DeBerry refused to make a statement but when asked if he would have used the gun on the attendant he shook his head "no"; and he said that Monsour was not with him at the gas station. DeBerry did not testify. His only defense was an attempt to discredit Vinyard. To this end he sought to show that at the preliminary hearing Vinyard testified that he felt a steel object in his back and that he said nothing about a gun. His attorney asked each of two witnesses if he recalled what Vinyard's testimony had been "as far as a gun was concerned." An objection was made that no proper foundation had been laid for impeachment. The court sustained the objection saying, "That is not the way to prove this kind of a proceeding in a court, and I will not permit this witness to take the place of a court reporter." The objection was properly sustained but not for the reason given. What a person said on some other occasion contrary to what is said in court may be used for impeachment. The contrary statement may be testified to by anyone who heard it. People v. Smith, 391 Ill 172, 62 NE2d 669 (1945). If the contrary statement was made in a judicial proceeding a court reporter's testimony based on his notes is the best testimony, but impeachment is not limited to a court reporter. Vinyard's testimony at the preliminary hearing was not transcribed. The two witnesses who were present at the hearing and who heard him testify were competent to relate what he said. However, a proper foundation had not been laid for their testimony.

Vinyard had not been interrogated regarding the nature of his testimony at the preliminary hearing. There had been no intimation while he was being cross-examined that his testimony differed in any way from that at the preliminary hearing and he was not questioned at all about the gun or the object thrust in his back. It is necessary to alert the witness about the proposed impeachment to avoid unfair surprise and in order to give him an opportunity to explain his previous statements. People v. Moses, 11 Ill2d 84, 142 NE2d 1 (1957). This was not done and the proffered testimony was correctly excluded.

██ ██ The next and major error relied upon for reversal is a series of comments by the trial judge which the defendant asserts prejudiced him. The most serious of these took place during the final argument of his attorney who said that DeBerry "is sitting here for his life and liberty." In sustaining an objection the court remarked: "He is not sitting here for his life. . . . Counsel knows that this particular offense, under certain circumstances, is probationable." The defendant's attorney rejoined: "Well, well, your Honor, that almost takes my breath away" and the court replied, "Takes your breath away? This not a death penalty case." This colloquy was unfortunate and the court's reference to probation was error. The suggestion of leniency or of possible probation, which is within the court's power to grant in the event a defendant is found guilty, could, in a close case, influence a jury's verdict. Under the facts of the present case, however, we do not believe the reference to probation could have been a persuasive factor in the finding of guilty. The evidence of the defendant's guilt was so conclusive that a not guilty verdict would have been a miscarriage of justice.

 Additional instances are pointed out of remarks interposed by the court which the defendant complains

deprived him of a fair trial. A careful examination of the record discloses that in a number of instances the remarks were induced by the defendant's counsel who conducted himself in a provocative manner. A guilty person, of course, must have a fair trial and there is not one way to try a defendant who is guilty and a different way to try an innocent defendant. But in each case an evaluation of the effect upon the jury of a trial court's interjections must be made in the light of the evidence, the context in which they were made and the circumstances surrounding the trial. While some of the court's comments in this case would have been better left unsaid, we have considered each one as well as their total impact upon the jury and feel that they were not of such a nature as to prejudice the defendant. The comments made by the court were also tempered by adequate instructions which told the jury that it was not the intention of the court, by anything it said or did, to express an opinion as to the evidence or the defendant's guilt or innocence.

The defendant received a trial free from prejudicial error and the judgment of the criminal court is affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.