(No. 22062.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PHILIP MANGANO *et al.* Plaintiffs in Error.

*Opinion filed December 22, 1933.*

ALBERT R. FILITTI, (ROLAND V. LIBONATI, and JOHN M. LONERGAN, of counsel,) for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

This case comes to this court on writ of error to the criminal court of Cook county to review a judgment of conviction of the plaintiffs in error, Philip Mangano and Louis Clementi, (hereinafter called defendants,) of the charge of conspiracy, under section 46 of the Criminal Code. (Smith's Stat. 1933, p. 1017.) Defendants challenge the constitutionality of the section in question.

An indictment was returned at the November, 1931, term of the criminal court of Cook county charging defendants with conspiracy. The first, second and third counts charged, respectively, that defendants conspired to destroy the goods and chattels, four motor trucks and certain clothing, belonging to the International Cleaners and Dyers, a corporation, and in each count it was charged that the damage intended to be done was more than $15. The fourth count of the indictment charged that defendants conspired to injure the business of the corporation. In view of this count we do not regard proof of the value of the goods and chattels as being essential to a conviction under the indictment.

The facts were, that some time in June, 1931, representatives of the Cleaners and Dyers Union called on Harry Alpert, president of the corporation, and told him that he had been ordered not to do a certain kind of work which he had continued to do, and that because of this there would be a strike. The twenty employees of the company ceased work. Alpert did not know what, if anything, the union representatives had said to the employees. On July 31, 1931, Jerry Weil, a delivery truck driver, and

Sol Krisman, his helper, left the plant to deliver forty-eight overcoats belonging to down-town stores in Chicago which were customers of their employer. They were stopped in an alley near Seventh and Wabash avenue, in Chicago, by an automobile containing four men. Two of these men approached the truck, asked about the license and assaulted Weil with an iron bar or pipe. They then poured something on the coats which burned holes in the coats, and, as one witness described it, left them burned to ashes. Weil identified the defendant Clementi, and Krisman identified both Mangano and Clementi, as the men who assaulted Weil and poured the damaging substance on the coats. Julius Solinsky, a chauffeur for the International Cleaners and Dyers, testified that on August 1, 1931, while he and Weil were in a truck belonging to the company, they were approached at Thirty-ninth street and Wentworth avenue, in Chicago, by a Ford automobile containing four men, and he identified Mangano as one of the men in that car. This witness said Mangano then had an iron bar in his hand and called Solinsky some names. George Scott, an employee of the Lombard Garage, at Twenty-ninth and State streets, testified that on the night of August 11, 1931, three men came into the garage, where four trucks of the company were parked, and after forcing Scott to the rear of the garage attacked the four trucks. The motors and wind-shields were broken and the tires were cut and pierced with ice-picks. He stated that after these men left he found People's exhibit 1, an automobile license receipt from the Secretary of State of Illinois, bearing the name of Philip Mangano, 1506 West Taylor street, Chicago, Illinois, and the make, license and motor number of the car, on the floor of the garage. Exhibit 2 was a city of Chicago automobile license issued August 4, 1931, to P. Mangano, 1506 West Taylor street, good until January 1, 1932, signed by the mayor and attested by the city clerk. Exhibit 3 was a statement of account, or bill of

sale, showing the sale to Philip Mangano, 1506 West Taylor street, of one black Ford two-door sedan, engine No. A0471804, which is the same engine number which appears on People's exhibit 1. It also shows the sale to have been made to Mangano by the F. W. Mack Motor Company, 2300-2306 West Madison street, Chicago, June 28, 1931. James Fitzgerald testified that he was a sergeant of police in the city of Chicago; that on August 12, 1931, he went to the Lombard Garage, 10 East Twenty-ninth street, about 12:30 A. M., with officers Healy, Hennessy and Tussy. Officer Ferriter and Mr. Scott were there. He stayed fifteen or twenty minutes and saw the four damaged trucks. The motor blocks were broken and the tires were cut. One was a Ford, another was a Chevrolet and two were Dodge trucks. People's exhibit 1 was given to him in the garage by officer Ferriter, and he gave it to officer Healy to be marked. When he and the other officers left the garage they went to 1506 West Taylor street. Then they went to the Maxwell street station and to the Desplaines street station. Then they went to 1507 West Adams street. They found a black two-door Ford sedan in the rear of that building with license No. 1318921, the license number shown by People's exhibit 1. The radiator was still warm. Officer Healy opened the door and Mangano answered a knock at an inner door. They found Clementi in another room off the kitchen. Mangano told Fitzgerald the car in the rear was his and that he had the identification for it. He went to his coat and searched it and did not have it. Fitzgerald asked him if he gave it to anyone, and he replied, "No." He said, "I have not got it." About 10:30 on August 12, 1931, Weil and Solinsky came to the detective bureau. While there Weil identified Clementi as the man who jumped on his truck on July 31, struck him on the head and threw acid on the clothes in the truck. Solinsky there identified Mangano as the man in a car, with others, who tried to crowd him against the curb at

Thirty-seventh and Wentworth avenue on August 1. Fitzgerald said: "People's exhibits 2 and 3 for identification were given to me by officer Ferriter on August 12. We inventoried them and sent them to the custodian's office, where they remained until now." Officer Healy corroborated the testimony of Fitzgerald in detail, and added that the four trucks at the Lombard Garage bore the name of the International Cleaners and Dyers; that at 1507 West Adams street Mangano gave them the keys to the Ford they found in the rear; that witness drove the Ford to the station; that exhibits 4 and 5 were ice-picks found in the tires of the trucks in the Lombard Garage, and that exhibits 2 and 3 were handed to him about 5:00 o'clock in the morning of August 12, 1931, by Fitzgerald at the Pekin station. He said further that he marked them with his own initials. He also said that on that morning when Weil and Solinsky were at the detective bureau he asked Mangano whether he lived at 1506 Taylor street, to which Mangano replied that he "used to live there." Lorenzo Scott testified that he went to the Lombard Garage about 11:30 the night of August 11, 1931; that his father, George Scott, was there alone; that he found People's exhibits 2 and 3 on the floor of the garage and carried them to the police station. He further said that he saw People's exhibit 1, and that his father gave it to the police at the garage that night. The defense was an alibi.

The language in section 46 of chapter 38 above mentioned, which defendants claim makes the section unconstitutional because it denies them the equal protection of the law guaranteed them by the State and United States constitutions, is: "Associations, corporate or otherwise, of farmers, gardners [gardeners] or dairymen, including livestock farmers and fruit-growers, engaged in making collective sales or marketing for its members or shareholders of farm, orchard or dairy products, produced by its members or shareholders are not conspiracies, contracts,

agreements, arrangement of [or] combinations made by such associations or the members, officers or directors thereof in making such collective sales and marketing and prescribing the terms and conditions thereof are not conspiracies and they shall not be construed to be injurious to the public trade." No mention is made in the section of any other kind of collective sales or marketing. Co-operative marketing and steps taken to bring it about, as referred to in the language quoted, have not been heretofore, and are not now, facts that in any way make up the elements of the charge of conspiracy. No useful purpose would be served by speculating as to what induced the legislature to amend this section by attempting to make the purported exception by adding the language quoted. If farmers, gardeners, dairymen, stockmen or fruit-growers committed any of the acts enumerated in the other parts of the section, even though such acts were done in connection with collective marketing, they would be guilty of and be punishable for conspiracy. Likewise, if any other group formed co-operative marketing associations or combined for the purpose of collective selling they would not be guilty of conspiracy by that alone and would not be punishable unless they violated some other statute not here involved. This is not a case similar to that presented in *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540, 46 L. ed. 679, where the legislature attempted to exempt farmers from the operation of an anti-trust act. This section does not, in our opinion, deny the equal protection of the law to these defendants.

As to the complaint that section 46 is too indefinite, and therefore void, we are not able to agree with counsel for defendants. Any confusion and uncertainty were removed by the decision in *People* v. *Lloyd*, 304 Ill. 23, on p. 102, where two amendments to this section, passed at the same session of the legislature and effective the same day, were discussed and given their proper effect. Further-

more, we cannot agree with the contention that the indictment does not charge an offense against the statute.

The record shows that four jurors had been selected and sworn and were allowed to separate for the night. Before the remaining eight were selected next day, a newspaper, with an article it contained concerning the trial, was brought into court. One of the four men stated he had read a newspaper containing such an article, but that he had no opinion as to the guilt of defendants from such reading. The trial court refused to declare a mis-trial, refused permission to withdraw a juror and denied a motion for continuance. This was within the sound discretion of the court.

The next objection is to the admission in evidence of the three documents and two ice-picks, all of which were found the same night in the Lombard Garage after the three men had been there and had damaged the trucks of the International Cleaners and Dyers. We have already pointed out a part of what the first three exhibits contained; that Mangano admitted having lived at 1506 West Taylor street; that he owned the Ford sedan which bore the license number exhibit 1 contained; that he thought he had the papers which would identify him as the owner of the car, searched for them, could not find them, and denied having given them to anyone else. We think that these exhibits and the matters covered by this testimony in this connection were all properly admitted in evidence. Defendants rely upon *People* v. *Pfanschmidt*, 262 Ill. 411, on p. 465, where it was held to be prejudicial error to allow a copy of a letter written by a third person to the father of the accused, and a dollar bill found at a bank some weeks after the murder, to be introduced in evidence. There was no showing that the accused knew anything about the letter, whether his father ever received it, or, from what appears in the decision, that there was any connection between the accused and the dollar bill. The exhibits in this case were

found in the Lombard Garage the night the trucks were damaged. Mangano's name, address, automobile license number, the name of the firm that sold the car to him, and many other facts, were contained therein. Under the circumstances this evidence was admissible.

Counsel next object to the fact that parol evidence was admitted to prove a prior conviction of larceny on the part of defendant Clementi. Only a general objection was made as to this manner of proving the conviction. In his argument in the trial court counsel admitted the People had a right to prove the prior conviction, and he made no objection that the proof should have been by the record of conviction rather than by parol evidence. In *Simons* v. *People,* 150 Ill. 66, we said in passing on this exact point, where the defendant, as here, had been asked on cross-examination if it were not the fact that he had been convicted in West Virginia, some years before, of the crime of perjury, and a general objection was made and overruled, whereupon he answered in the affirmative: "It was not suggested to the court that the fact of conviction could only be proved by an authenticated copy of the record. Had the objection been made on this ground, doubtless the court would have excluded the evidence. The general objection made by the defendant was not sufficient." Objections also were made to questions concerning other trouble Clementi had been in, but in every instance a careful examination of the record shows that these objections were made after the question had been asked and fully answered. He had testified to the fact of prior difficulties on direct examination. The trial court could not anticipate objections. Counsel waited until the witness had answered the question and then made objections, and where the answer showed acquittal of other charges, (coming, as these matters did, after evidence that Clementi had been convicted of larceny and had served a term at the reformatory at Pontiac,) we cannot see how defendants were materially

harmed by the overruling of these late objections or the court's refusal to grant the motion to strike. We said in *McCann* v. *People*, 226 Ill. 562, in quoting with approval from *Jennings* v. *People*, 189 Ill. 320, the following: "The plaintiff in error, while upon the witness stand, admitted upon his direct examination, in reply to questions propounded to him by his own attorney, that he had been in the reform school and the penitentiary twice, and in view of the fact that the evidence was of such a character that the jury could not have found differently than they did, we are of the opinion that, even though an exception had been preserved to the remark of the State's attorney, the case ought not to be reversed on account thereof." We are not inclined to reverse this case on this ground.

It is next objected that questions asked for the purpose of impeachment of the witnesses Jerry Weil, Sol Krisman and Julius Solinsky were objected to and the objections sustained, and that neither defendant was permitted to testify that he was not identified at the preliminary hearing before Judge Fairbanks. As to the impeaching questions asked of Weil, which appear on page 17 of the abstract, the objection was properly sustained. He gave the same answers at this trial as at the preliminary hearing, except for slight and immaterial details. As to the impeaching questions asked of Krisman, after sustaining objections to these questions at page 22 of the abstract the court permitted the questions to be asked and answered, as shown at page 23 of the abstract. As to the witness Solinsky, the impeaching question asked of him shown on page 25 of the abstract was not objected to and was answered. As to the impeaching questions asked of him shown on pages 27 and 28, the objection was properly sustained for the reason that the witness had not been asked anything about identifying Mangano during the preliminary hearing but had only been asked as to identifying Mangano at the de-

tective bureau and on the street. Without objection the impeaching question was asked and answered by the witness George Scott,· as shown at page 31 of the abstract. In addition to this, abstract pages 70 to 73, inclusive, show that Jeanette Roth, a court reporter, who took the testimony at the preliminary hearing, was called to impeach the following witnesses for the People: Officer Healy, Krisman, Scott and Solinsky, and testified fully from her notes as to each, with only one objection being made, which was immediately withdrawn. No harmful or prejudicial error is shown in these rulings of the court.

Counsel on both sides of the case were equally guilty of unnecessary remarks, and there is nothing that in our opinion would work a reversal of the judgment of conviction for what was said by counsel for the People. The remarks in question on both sides of the table could have been, and should have been, left unmade.

No weight can be given to the next objection by counsel for defendants, to the effect that when a witness left the court room police officers followed him out into the corridor and there arrested him. This was not in the presence of the jury. There is nothing to make it appear that the jury paid any attention to the order of ingress and egress of persons in attendance at the trial.

Instructions Nos. 9, 11 and 12 relate to an alibi. They were erroneous and were properly refused. This is also true of Nos. 4, 6, 13, 15, 16 and 18, which were refused. Those remaining were either not mentioned in the argument of the case or were covered by instructions which were given for the People or the defendants.

Lastly, the court fined each of the defendants $2000 and sentenced them to the penitentiary on February 25, 1933. Later, on March 3, at the same February term, 1933, on motion of the State's attorney the court vacated the prior sentence and sentenced each of the defendants to the Illinois penitentiary on the verdict for a term of from one

to five years and a fine of $2000. It was ordered that if at the expiration of the sentence at the penitentiary the fine was not paid, the warden was to deliver the defendant to the sheriff of Cook county, and the sheriff of Cook county was ordered to confine the defendant in the house of correction until the fine was paid, or worked out at the rate of $1.50 per day. Both defendants were named and the same provision was made for each. On February 25, 1933, an order was also entered granting sixty days for a bill of exceptions and a thirty days' stay of the *mittimi*. It is contended, first, that the court was without jurisdiction to change the sentence; and second, that the Parole act applies to the crime of conspiracy, and that the court was without authority to order the warden to turn these defendants, or either of them, over to the sheriff of Cook county if they, or either of them, failed to pay the fine imposed, and to order them, or either of them, confined in the workhouse until the fine was paid, or worked out at the rate of $1.50 per day. In *People* v. *Turney*, 273 Ill. 546, at page 556, we said in quoting from *Commonwealth* v. *Weymouth*, 2 Allen, 144: "So in a criminal case, so long as the sentence remains entirely unexecuted in any part and no execution of it has been attempted or made, it has been held that it might be revoked and another sentence be substituted." It cannot be claimed that either of these defendants had entered on the execution of his sentence. In *People* v. *Stavrakas*, 335 Ill. 570, we said: "It is further contended by the defendants that the court erred in stating in its sentence of the defendants that if at the expiration of their term of imprisonment the fine and costs so imposed should not be paid, that then the amount of such fine and costs should be worked out by the defendants in the house of correction at the rate of $1.50 per day. In their argument the defendants referred to the second section of the Parole act, which provides that no person shall by any court be committed to the penitentiary,

reformatory or other State institution for the recovery of a fine or costs. It is a sufficient answer to this argument that the house of correction of Cook county is not a State institution. The sentence of the court was not erroneous for the reason suggested by the defendants' counsel. It is also suggested by counsel that the clause, 'or other State institution,' should be construed to include any place of incarceration in the State of Illinois. We do not think that said provision of the statute is susceptible of that construction. The evident intention of the legislature by said provision of the statute was to prevent a defendant's sentence to the penitentiary, reformatory or other State institution being extended by compelling him to submit to further imprisonment to pay his fine and costs. This is shown to be the true construction of that section by reason of other provisions of the Criminal Code. One of such provisions is that of section 10 of division 14 of the Criminal Code, which provides that 'any person convicted, in a court of this State having jurisdiction, of any crime or misdemeanor, the punishment of which is confinement in the county jail, may be sentenced by the court in which such conviction is had, to labor for the benefit of the county, during the term of such imprisonment, in the workhouse, house of correction, or other place provided for that purpose by the county or city authorities.' It will be noted by the provisions of section 10 that they are not applicable to any person convicted in a court of this State having jurisdiction of any misdemeanor the punishment of which is confinement in the penitentiary, State reformatory or other State institution. By the provisions of section 168$b$ of the Criminal Code (Hurd's Stat. 1921, p. 1106,) it is provided that any person convicted of petit larceny, or any misdemeanor punishable under the laws of this State in whole or in part by fine, may be required by the order of the court of record in which the conviction is had, 'to work out such fine and all costs, in the workhouse of the city, town

or county, or in the streets and alleys of any city or town, or on the public roads in the county, under the proper person in charge of such workhouse, streets, alleys, or public roads, at the rate of $1.50 per day for each day's work.' This latter section of the statute is applicable to the offense of which the defendants are convicted. The statute under which they are punished imposes punishment in part by fine and in part by a penitentiary sentence as one of the penalties for the crime of conspiracy. The crime of conspiracy, for which the defendants are convicted, is a misdemeanor. A felony, under our statutes, is an offense punishable with death or by imprisonment in the penitentiary, while every other offense is a misdemeanor. When the offense may be punished by imprisonment in the penitentiary, or by fine only, or by punishment in the penitentiary and by fine, in the discretion of the court or jury, it is only a misdemeanor. (*Lamkin* v. *People,* 94 Ill. 501; *Baits* v. *People,* 123 id. 428.) The provisions of section 168*b* of the Criminal Code are therefore clearly applicable to the charge against the defendants in this case. The court, in sentencing the defendants to work out their fine at the rate of $1.50 per day in the house of correction in case they did not pay their fine, did not commit error except in using the term 'house of correction' in place of the term 'workhouse.' If the city of Chicago or the county of Cook did not have a workhouse as distinguished from a house of correction the court did not commit error, as the provisions of sections 5, 10 and 13 of chapter 67, entitled 'Houses of Correction,' indicate that a house of correction is a place of work for criminals having to work out their fine. If Cook county had a workhouse and also a house of correction the judgment and sentence of the court would be erroneous because of the fact that the sentence of the defendants was to the house of correction. We assume, however, that the court's sentence was correct and that

the house of correction was the only workhouse in Cook county."

While the objections urged have been numerous, the record in this case shows that these defendants received a fair trial. The record is not entirely free from error, but in our opinion the rights of these defendants were not prejudiced unduly by any error that is assigned by their counsel.

The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*