(No. 28427.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DAVID A. MARMON *et al.*, Plaintiffs in Error.

*Opinion filed January 17, 1945—Rehearing denied March 20, 1945.*

WARREN H. ORR, and LOREN E. LEWIS, both of Chicago, for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH A. POPE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error Marmon, Weiss and Nick Charles were found guilty of the confidence game by a jury in the criminal court of Cook county. Charles was placed on probation and Marmon and Weiss bring the cause here. The indictment charged that the defendants fraudulently and feloniously obtained from Clarence E. Willms and Mildred B. Willms the sum of $550 by means and by use of the confidence game.

Plaintiff in error Marmon, with three other persons, on February 21, 1941, entered into an agreement with one E. J. Murphy, as agent for certain trust beneficiaries, for an option to purchase lots in Westgate Park Homes subdivision at 9800 Roosevelt road in Cook county, Illinois. The price was $500 to $550 per lot, depending upon the size. The optionees, referred to in the agreement as buyers, agreed to advertise and improve the lots with paving and sidewalks at their own expense. The terms of the option required the buyers to notify Murphy as soon as each lot was sold and pay him 25 per cent of the down payment received and 60 per cent of each subsequent payment. Plaintiff in error Marmon and his associates, under their option, had the right to cancel contracts for defaults in payments, and to receive credit for payments made on the lots, in case the lots were resold. About twenty-five homes were built in the subdivision before restrictions were placed on nondefense building in April, 1942. Plaintiffs in error were stockholders, officers and directors of Westgate Homes

Corporation, with offices at 30 North La Salle street in Chicago. The corporation erected an office in the subdivision and Charles acted as a salesman.

The Willmses testified they stopped to look at lots in the subdivision, met plaintiff in error Charles, looked at lots and a house under construction, and were assured by Charles that because Willms was a motorman for the Chicago Rapid Transit Company, he was a defense worker, and priorities could be obtained, and he, Charles, could build them a home. Their testimony given in this case is the same as their testimony in *People* v. *Marmon, ante,* p. 19, brought against these plaintiffs in error on a similar transaction, and need not be repeated here in detail. A number of witnesses were called by the People to prove intent and guilty knowledge on the part of defendants. Their testimony in this case was the same as in *People* v. *Marmon,* just referred to, except that some of these witnesses stated on cross-examination that their transactions with plaintiffs in error were business transactions. Their evidence need not be again set out in this opinion.

At the close of the People's evidence, separate motions for directed verdicts finding plaintiffs in error not guilty were denied. Plaintiffs in error placed Bernard J. Shanley on the stand and, after he had testified at some length, objection to his testimony was sustained. It was ordered stricken and the jury instructed to ignore it. Plaintiffs in error then made an offer to prove by that witness that shortly after Labor Day in 1942 he began to negotiate with Marmon to contract with him for the construction of homes in Westgate Park and that Shanley took steps to get priorities; that he was granted priorities to construct thirty-two homes but by reason of title difficulties Marmon had with Murphy, it was decided to reduce the number to twenty, and that Murphy finally blocked all efforts to build homes by insisting upon a bonus of $10,000 before he would release the lots.

Marmon was the only plaintiff in error who testified. He admitted the sales testified to by the several witnesses for the People, the payments made by each of them, and that he told each of them that he would construct houses for them as soon as priorities could be obtained; but he denied that he promised to complete houses within the time the several witnesses testified, and denied that he promised to return the money paid if he failed to complete their homes as they testified. He admitted signing the contracts with Murphy, and stated that he did not make the payments to Murphy according to the contract because Murphy demanded more than he was entitled to under the contract. Marmon admitted telling Willms, and other customers to whom he traded lots in Golf View addition, that he thought they would make money on their lots, but denied that he told them or any of them that he would sell their lots within thirty or sixty days at a stated profit and, if he did not, he would give them their money back. He also denied telling the Willmses that he had a buyer for their lot in Golf View addition at $3150. He admitted asking each of the witnesses if they could not pay up their contracts in full; that he was always short of money in that business; that they were in difficulties every day during 1942 and still are. Marmon further testified that he did not pay for the lot he sold to the Willmses; that while the contract provided that when paid for he was to clear up the unpaid taxes, delinquencies and special assessments, he made no investigation, after the contract with the Willmses was signed, and the $344 additional was paid, because there was plenty of time to clean it up after the lot was paid for. At the close of all the evidence, plaintiff in errors' separate motions for a directed verdict of not guilty were denied. The jury returned separate verdicts finding each plaintiff in error guilty.

The errors urged are: (1) There is no evidence to sustain a conviction of confidence game, (2) errors in rulings

on evidence and instructions to the jury, and (.3) error in refusing to interrogate the jury as to whether or not it had read a newspaper article referring to plaintiff in errors' prior conviction.

The record in this case is, for the most part, practically the same as in *People* v. *Marmon*, decided at the November term of this Court. This case was tried by a jury, whereas that case, involving the charge of swindling Evelyn Litz and Harold Litz, was tried before the court without a jury. The swindling transaction in both cases arose out of the sale of lots, the only difference being the numbers of the lots and the amount taken from the respective complaining witnesses. The methods used by plaintiffs in error to obtain the money of complaining witnesses were shown to be practically identical. The contentions that the evidence did not sustain a conviction of confidence game, and claimed error in admitting evidence of other transactions, were also assigned and urged in the former record and were passed upon adversely to the contentions of plaintiffs in error. On those points, what this court said in that opinion need not be repeated.

Plaintiffs in error insist it was error to refuse to give their seventh instruction, which reads as follows: "The court instructs the jury that proof of transactions between the defendants and the witnesses who purchased lots in Westgate Park Homes Subdivision, other than the Willms, shall only be considered by the jury in determining the intent with which the act charged in the indictment was done, and may not be considered by the jury, unless you are satisfied by the other evidence, beyond a reasonable doubt that the defendants, and each of them, committed the act charged in the indictment." The instruction precludes the jury's consideration of proof of other transactions, unless satisfied by other evidence that the accused committed the act charged in the indictment. This is not a correct statement of the law. Criminal intent is an ele-

ment of the crime charged and evidence as to that element may properly be considered in the first instance, on the question of guilt of the accused.

It is next contended that it was error to refuse to question the jury as to whether it was prejudiced by a certain newspaper article referring to a prior conviction of plaintiffs in error, appearing after the selection of the jury; and to refuse to order a mistrial on that account. It was held by this court in *People* v. *Mangano,* 354 Ill. 329, and *People* v. *Herbert,* 340 Ill. 320, that the question whether a mistrial should be ordered in such a case rests in the sound discretion of the court. The motions made by defendants did not assert that the jurors had read the newspaper article, and to have questioned them to find out whether they had done so would certainly have disclosed such newspaper article to the entire jury. Under these circumstances, it seems clear that the trial judge's refusal was not an abuse of discretion.

It is complained that the court erred in refusing to admit the testimony of B. J. Shanley that he had tried in September, 1942, to procure priorities to build houses in Westgate addition. The proffered testimony related to a time subsequent to the transactions with complaining witnesses and did not purport to cover the lot sold to them. Much of that evidence was, necessarily, hearsay. We are of the opinion that the court's refusal to admit it for what it was worth was not an error requiring reversal of the judgment.

This record is not free from error, but plaintiffs in error have been so abundantly proved guilty that we would not be justified in reversing this judgment merely to try to procure a better record. (*People* v. *Ney,* 349 Ill. 172; *Mash* v. *People,* 220 Ill. 86.) The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*