(No. 29424.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARY MURAWSKI, Plaintiff in Error.

*Opinion filed May 21, 1946—Rehearing denied September 12, 1946.*

Wilson, J., dissenting.

B. Jay Knight, Frederick H. Haye, and Thomas A. Keegan, all of Rockford, for plaintiff in error.

George F. Barrett, Attorney General, and Max A. Weston, State's Attorney, of Rockford, (Robert C. Kelso, of Rockford, of counsel,) for the People.

Mr. Justice Smith delivered the opinion of the court:

Upon a trial before a jury in the circuit court of Winnebago county, plaintiff in error was found guilty of the crime of abortion. After overruling motions for a new trial and in arrest, judgment was entered on the verdict. Plaintiff in error was sentenced to the penitentiary. She has sued out a writ of error in this cause to review that judgment. The errors assigned relate to the sufficiency of the evidence; the action of the court in refusing to order and declare a mistrial; the giving of instructions; the argument of the State's Attorney to the jury, and the conduct of the court during the trial.

In view of the conclusion which we have reached, we express no opinion on the weight of the evidence. The record shows that the trial was commenced on April 9, 1945. On the adjournment for the day, the jury was permitted to separate overnight. On the convening of court on the morning of April 10, plaintiff in error, by her attorney, presented a motion in which the court was asked to order and declare a mistrial. To the motion was attached the affidavit of her attorney. By the affidavit it was shown that in the morning issue of a local newspaper, published and circulated in the city of Rockford on April 10, 1945, a certain article appeared concerning the proceedings of the trial on the previous day; that the article referred to certain alleged criminal charges made against the defendant on prior occasions, and was highly prejudicial to the defendant. It was further stated in the affidavit that the newspaper in which this article appeared had a general circulation in the community covering approximately a radius of sixty miles from the city of Rockford; that during the examination of the jurors on their *voir dire,* on April 9, 1946, in answer to questions propounded by both the State's Attorney and the attorney for the defendant, several of the jurors stated that they were accustomed to reading this particular newspaper in their homes; that thousands of copies of the issue of April 10, 1945, were delivered to the respective home of the residents of Winnebago county and the city of Rockford; that copies were also sold on the newsstands throughout the city, and that said paper was the only daily morning newspaper published in the city of Rockford and vicinity. To the motion there was also attached, as exhibit A, a copy of the article complained of. Insofar as material, this published article is as follows:

"Mrs. Murawski, who has her home and place of business at 829 South Winnebago St. is licensed as a midwife. According to the records in the state's attorney's office, she

was first indicted in 1924 on a charge of murder by abortion after a woman had died as a result of an abortion. Mrs. Murawski, however, was never brought to trial.

"Twice in 1929, according to the records, she was indicted. The first 1929 indictment was for attempted abortion, again in connection with a death. In the second case that year, according to Weston, she was indicted for performing an abortion on Ivy Plager, widow of Vernon Plager, the man Paul Reed killed. Reed was sent to the penitentiary for murder. He was reported to have been responsible for taking Mrs. Plager to Mrs. Murawski. In neither of the 1929 cases was Mrs. Murawski brought to trial."

It clearly appears from the record that the "Weston" referred to in the article was the State's Attorney engaged in the prosecution of the case. The court overruled the motion for a mistrial, and ordered the trial of the cause to proceed. The action of the court in overruling the motion was duly objected to at that time, and was also challenged by the motion for a new trial. The jurors were not admonished, either by the instructions or otherwise, that they could not properly consider anything they may have read about the case.

Defendant in error seeks to justify the action of the court in refusing to declare a mistrial on the ground that there is no positive proof in the record that any of the jurors had read the particular article complained of. As pointed out by this court in *People* v. *Marmon,* 389 Ill. 478, any attempt to have questioned the jurors to ascertain whether they had read the published article would have disclosed it to the entire jury. The defendant in error, in support of its contention, relies chiefly on *People* v. *Marmon,* 389 Ill. 478; *People* v. *Harrison,* 384 Ill. 201; *People* v. *Mangano,* 354 Ill. 329; and *People* v. *Herbert,* 340 Ill. 320. The leading case is the last of the above-cited cases. It was said in that case that there was nothing in the record

save counsel's assertion to show that the jurors read the article complained of. Similar language was used in the other cases above referred to. All of those cases, however, were tried in the city of Chicago, where there were a number of newspapers published and circulated, and where the population is exceedingly dense. It was shown by the record in that case that when the article complained of was called to the attention of the court, the jury was instructed that it must ignore all mention of the defendant in the newspapers; that it had been sworn to try the case only upon the evidence adduced on the trial, and that there was no evidence that the defendant had been connected with any other unlawful business. No such precautions were taken in this case. In those cases the oft-repeated rule was announced that whether a mistrial should be declared because a juror, who has been selected and sworn, has read a newspaper article concerning the trial, rests in the sound discretion of the court. This is, however, a sound judicial discretion, the abuse of which will constitute reversible error.

Whether the denial of the motion for a mistrial in this particular case constituted an abuse of the discretion vested in the trial court depends upon whether the record fairly shows that at least some of the jurors read the article, and the character of the article itself. We think the record sufficiently shows that the jurors had access to the issue of the paper in which the article appeared and that it cannot be said that none of the jurors read the article. The newspaper in which it appeared was the only morning newspaper published in the city of Rockford. It would be a violent presumption to say that no one of twelve men and women, having the intelligence of average jurors, would read the only local morning paper. According to the affidavit attached to the motion, the paper had an extensive circulation in the city of Rockford and the sur-

rounding community. It is further shown by the affidavit that the examination of the jurors on their *voir dire* disclosed the fact that several of the jurors were accustomed to reading this particular newspaper in their homes. We think it is not too much to say that most every juror who had access to the particular issue of the paper in which the article appeared would undoubtedly have read the account concerning the trial in which he was serving as juror. Particularly is this true where the article appeared in the home paper of the juror, which he was accustomed to reading.

As said in *Griffin* v. *United States,* 295 Fed. 437, we think it is idle to say that there is no evidence to show that the jury read the article. The jury separated at the close of the day's session of the court. The jurors were free to go and come and to do as they pleased. It is incredible that going out into the community the jurors did not see and read this article appearing in their home paper. The case is decidedly different from those presented in the opinions. in the cases relied upon by the defendant in error. Those cases were tried in a large, condensed metropolitan area, where many newspapers were published and issued.

No one can plausibly contend that the published article was not calculated to prejudice the jury against plaintiff in error and deprive her of a fair trial. The particular vice of the published article is that it purports to quote from an interview with the State's Attorney, and to present facts stated by him and stated to be shown by the records in his office concerning other charges of crime made against plaintiff in error over a period of years. That the facts set out in the article would have been wholly incompetent and improper to be brought to the attention of the jury by evidence, argument, or otherwise, during the trial, is too clear to admit of controversy. Nevertheless, those facts were brought to the knowledge and attention of the jurors

who read the article, as statements made by the State's Attorney, and as facts appearing from the records in his office.

Moreover, the State's Attorney made use of those facts in his argument to the jury by insinuating that plaintiff in error was "trafficking in this illicit business of killing babies before they are born." The word "trafficking" imputes the carrying on or engaging in a business. The only facts justifying this imputation were those contained in the newspaper article. This argument was highly improper and it was made more vicious by the fact that it was based upon the published article, which improperly brought such facts to the attention of the jurors. We do not think that this is a case in which it may be said that there was no evidence that at least some of the jurors had read the article. It is, therefore, clearly distinguishable from the cases relied upon by the defendant in error.

Objection is also made to instructions Nos. 27 and 28, given on behalf of the People. The particular objection to these instructions is that they assume one of the elements of the crime with which the defendant was charged, without requiring proof of such element beyond a reasonable doubt. We think the objection is well taken. It is true instruction No. 27 was applicable only to the second count of the indictment under which the defendant was found not guilty. No harm resulted from the giving of this instruction. The instructions are long and somewhat involved. They did not, in all respects, properly limit the jury to the facts found by it from the evidence. They were well calculated to mislead the jury. They should not have been given in the form in which they were given.

Some criticism is made of the conduct of the trial court during the progress of the trial. From a careful examination of the record, however, we are of the opinion that such criticism is unfounded.

Other errors are assigned, but, inasmuch as the cause must be remanded for a new trial, it is unnecessary to pass upon other alleged errors appearing in the record. The bases for these objections will undoubtedly be obviated upon another trial.

For the errors pointed out, the judgment of the circuit court of Winnebago county is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*

Mr. JUSTICE WILSON dissenting.