People of the State of Illinois, Plaintiff-Appellee, v.
John R. Cox, Defendant-Appellant.

Gen. No. 10,712.

Fourth District.

September 8, 1966.

Albert E. Hurt, Public Defender, of Decatur, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, for appellee.

SMITH, J.

Defendant was sentenced for a term of 10–30 years on a jury conviction for the crime of burglary. He asserts as reversible error: (a) A prejudicial newspaper account and (b) improper evidence of flight and an instruction thereon.

Defendant and Orville Thompson were jointly indicted for burglarizing the Friendly Tavern. Severance was

granted and Thompson was tried and convicted. One Vernon Hall, a 15-year-old patron of the Illinois Youth Commission, admitted his participation and implicated both Thompson and Cox. Both Hall and Thompson testified for the People, the latter as a Court's witness. While the trial was in progress, the only morning paper in Decatur published an article in which the defendant Cox was designated as an "ex-convict" with whom the witness Hall "shared the loot"; stated that Thompson was convicted of the burglary on May 6—some three weeks before; that Hall testified that they went on a round of burglaries including two gasoline stations and that "Cox was sentenced to 1 to 20 years in prison for car theft in 1945 and to 3 years to life for burglary in 1950." The defendant moved the court to inquire of the jury as to whether or not they had read the article. The motion was denied. There is nothing in the record to indicate that the jury had read the article and the trial court on four occasions, both before and after the occurrence, cautioned the jury about reading newspapers or listening to radio broadcasts, television, etc., and instructed them that innocence or guilt should be based solely on evidence heard by them in the courtroom and that anything read in the newspapers, heard on radio or seen on television should be disregarded.

We are thus brought to focus on the ever increasing conflict between freedom of the press and the right of an accused to a fair trial—a right that insures, so far as human agencies can, that any conviction is founded on courtroom evidence tempered by the known everyday experiences of mankind but not stained or tarnished by improper considerations. The all too frequently recurring occasions when the news media editorializes and comments rather than reports a trial in progress coupled with the questionable practice of some prosecutors, some defense counsel and even some judges to do a better job in the press than they do in the courtroom is of no small

concern to devotees of constitutional government. Freedom, as we know it, has never and does not now imply freewheeling. Unrestrained freedom in an organized society is the progenitor of chaos. Either the agencies mentioned police themselves or judicial restraints or sanctions must be devised to insure a fair trial in the courtroom of those charged with crime. Sequestration of the jury or new trials are time consuming and expensive alternatives to self-imposed and self-invoked conduct which will assure to all the constitutional guarantees of a fair trial. Otherwise, it is not the defendant who loses the right to a fair trial, it is society that loses the right to try him.

The United States Supreme Court in two recent cases has discussed the problem. Estes v. Texas, 381 US 532, 14 L Ed 543, 85 S Ct 1628 (1965); Sheppard v. Maxwell, 384 US 333, 16 L Ed2d 600, 86 S Ct 1507 (1966). In Sheppard, page 620, Justice Clark lays down the ground rules with this language:

> ". . . But we must remember that reversals are but paliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function. Collaboration between counsel and the press as to information affecting the fairness of a criminal trial is not only subject to regulation, but is highly censurable and worthy of disciplinary measures. . . ."

 Both Estes and Sheppard seem to hold that prejudice is affirmatively shown where both the trial and pretrial conduct of all media was conducted in a carnival atmosphere and the probabilities of prejudice to the de-

345

fendant is clearly evident even to the reviewing court. Such proceedings are lacking in due process. We do not deal with any such situations here. It seems clear the published material was not subject to the carnival disabilities of Estes or Sheppard. The difficulty here is that we do not know what effect the published material may have had on the verdict. No inquiry was made. No prejudice is affirmatively shown. The nature of the material and the conduct shown does not approach Estes or Sheppard to the extent that the probabilities of prejudice are clearly evident. It is true that inquiry of a jury during the progress of a trial is apt to be unsatisfactory but it at least gives some suggestion as to whether the verdict was tainted with improper consideration and improper influences. Once known, it is not every publication, inadvertently made, that warrants a new trial. The People v. Malmenato, 14 Ill2d 52, 150 NE2d 806; People v. Taylor, 32 Ill2d 165, 204 NE2d 734. It is clear that several items of the instant publication would have been inadmissible if offered in evidence. It ought not reach the jury through the back door and affect its verdict when the front door is closed to it. Where such a situation arises, it is clearly the duty of the trial court to determine, if alerted, so far as he can whether the article contains improper matter, whether it was read and whether its reading would or could affect the verdict. The failure to do this in the case at bar requires that this case be retried. In Sheppard, seven of the twelve jurors were not interrogated about their reading of newspapers and there is a clear inference that due process requires that this be done. This divergence of views on this subject is clearly illustrated by the majority opinion and the dissents in People v. Hryciuk, 5 Ill2d 176, 125 NE2d 61. It is clear that the determination to be made by the trial court rests not alone on what the jury says on interrogation, but the nature of the published material together with all other facts and circumstances in the record. It calls for the exercise of a

346

sound judicial discretion, the abuse of which will constitute reversible error. People v. Murawski, 394 Ill 236, 68 NE2d 272. It strikes us that inquiry of the jury is at least a condition essential to the exercise of a sound discretion and that due process ought not hang in balance on the conjecture that no harm was done. At least human agencies will have done all that is humanly possible to ascertain the truth of the matter even though it should not have been necessary were it not for the inadvertent publication of facts incompetent and improper for jury consideration. This does not imply that every newspaper article published during trial requires an interrogation of the jury. Its nature, content and prejudicial effect, if any, is to be resolved by the trial court in an exercise of sound discretion. The article must be produced and made a part of the record and its prejudicial effect, if any, first carefully explored by the trial court. We would further observe that a cautionary instruction to the jury during the trial to avoid the use of the news media about the trial, conversing with others or among themselves is advisable. In this case, it was error to refuse the motion to interrogate the jury.

■ Hall testified that some eight days after the burglary he, Cox and Thompson were in Cox's car and saw a police car with a red light flashing. Cox, the driver, said, "Jack, let's jet it" and they did. A chase followed, and the car was wrecked and Hall was apprehended. Cox and Thompson were not caught. This evidence and the giving of the flight instruction is error. There is nothing in this record that suggests that Cox knew or should have known that he was a suspect. In the absence of such proof, the evidence is inadmissible and an instruction on flight improper. People v. Harris, 23 Ill2d 270, 178 NE2d 291; People v. Herbert, 361 Ill 64, 196 NE 821.

The alleged error of improper rebuttal testimony is not likely to recur on a retrial and we do not comment on it.

347

For the reasons assigned the judgment of conviction is reversed and the cause remanded for a new trial in conformity with the views expressed herein.

Reversed and remanded.

TRAPP, P. J. and CRAVEN, J., concur.