THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JACK EUGENE LAMPSON, Defendant-Appellant.

(No. 71-37;

Third District—August 17, 1972.

John L. Barton, of Defender Project, of Ottawa, for appellant.

F. Stewart Merdian, Assistant State's Attorney, of Rock Island, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The defendant, Jack Eugene Lampson, was convicted in the circuit

court of Rock Island County for the crime of burglary and sentenced to a term of not less than 4 nor more than 20 years in the penitentiary. This conviction was reversed and remanded for a new trial by our court in the case of *People v. Lampson,* 129 Ill.App.2d 72, 262 N.E.2d 601. On remand the defendant was again found guilty and sentenced to a term of imprisonment of not less than 4 nor more than 20 years. The essential facts in this case were set forth in the case of *People v. Lampson, supra,* and a recital of them as well as additional facts will be made only as they become pertinent to issues raised in this appeal. We note that in this appeal two briefs have been filed in behalf of the defendant, one being filed *pro se* and the other by the Illinois Defender Project.

We shall first direct our attention to the sole issue presented in the brief of the Illinois Defender Project, which is to the effect that the defendant's second conviction should be reversed when the same evidence which caused reversal in his first conviction was again placed before the jury.

The defendant's first conviction was reversed when the court held that admission of testimony by police officers which advised the jury that the defendant had refused to make statements and had asked for an attorney, neither of which facts could have any bearing on the defendant's guilt or innocence of the charged burglary, was prejudiciously erroneous.

After the jury had been selected for the second trial of the defendant by the circuit court of Rock Island County but prior to the presentation of any evidence, two local newspapers published the following reports about the trial:

"PICK JURY FOR RETRIAL OF IOWAN

Selection of a jury was begun this morning for the retrial of Jack E. Lampson, 33, Davenport, in Rock Island County Circuit Court.

An earlier conviction on a burglary charge was reversed by the Third District Appellate Court and a new trial was ordered.

Lampson was sentenced to four to 20 years in the Illinois State Penitentiary after being found guilty by a circuit court jury of the June 19, 1969, burglary of Gene-O's Tavern in Rock Island.

The appellate court ruled as prejudicial statements attributed to the defendant by police after Lampson allegedly indicated he did not wish to talk further. The high court ruled the defendant's rights had been violated.

The case is being tried before Associate Judge J. P. Wilamoski."
(Newspaper article from Rock Island Argus, December 16, 1970).
"SELECT JURY FOR DAVENPORT MAN

The selection of a jury in the trial of Jack E. Lampson, 33, Daven-

port, on a charge of burglary begun this morning in Rock Island County Circuit Court.

Lampson was granted a new trial by the Third District Appellate Court, Ottawa, after he was originally convicted of the charge on Oct. 1, 1969.

Lampson was arrested for a burglary at Gene-O's Tavern, 2301 4th Ave., Rock Island, on June 19 and reportedly refused to make a statement to police after being advised of his rights.

Later in the trial, testimony to the fact that he would not make a statement was admitted into evidence, and the court ruled that this was a violation of Lampson's rights and could prejudice the jury.

Lampson received a 4 to 20 year sentence on the charge.

Several routine pre-trial motions were argued this morning by Ken Collinson, assistant public defender, and Ron Tabor, assistant State's attorney, prior to the selection of a jury."

(Newspaper article from the Moline Dispatch, December 16, 1970).

The defendant moved the court to inquire of the jury as to whether they had read the articles and if so, had they been prejudiced by their exposure to such information as was contained in them. This motion was granted and the jurors were examined outside the presence of each other and it was further arranged that after each examination the jurors were not permitted to return to the jury room and mingle with the unexamined jurors. The examination of the jurors in which the trial court participated failed to disclose that any of the jurors had been prejudiced by their exposure to the articles in question, even though six of them stated that they had read a portion or all of one or the other of the articles. It should be noted, however, that upon examination all of these six jurors testified they could not remember any of the reasons set forth in the articles as to why the defendant had been granted a new trial. At the conclusion of the examination the defendant moved for a mistrial on the grounds that the newspaper articles were so prejudicial that exposure to them by the six jurors would have the effect of denying the defendant a fair trial.

■■ It is clear that several items of information contained in the newspaper articles are inadmissible in evidence and this court so held in the defendant's preceding appeal. Such information ought not to reach the jury through the back door and affect its verdict when the front door is closed to it. As stated in *People v. Cox*, 74 Ill.App.2d 342, 220 N.E.2d 7,

"Where such a situation arises, it is clearly the duty of the trial court to determine, if alerted, so far as he can whether the article contains improper matter, whether it was read and whether its reading would or could affect the verdict * * *."

■■ It is not every publication made and read by jurors that warrant a

new trial. (See *People v. Malmenato,* 14 Ill.2d 52, 150 N.E.2d 806; *People v. Taylor,* 32 Ill.2d 165, 204 N.E.2d 734.) In such situations it is clear that the determination to be made by the trial court rests not alone on what the jury says on interrogation, but also upon the nature of the published material together with all other facts and circumstances in the record. It calls for the exercise of a sound judicial discretion, the abuse of which will constitute reversible error. *People v. Murawski,* 394 Ill. 236, 68 N.E.2d 272; *People v. Cox, supra.*

In the instant case all the jurors were examined by counsel and the court and it should be noted that precautions were taken that the jurors be segregated from each other during and after the examination. All jurors stated they were not influenced by any newspaper article. None of the jurors testified that they remembered or had any knowledge as to why the defendant was being granted a new trial. At the conclusion of the interrogation of each juror they were admonished by the trial court that they were to consider only evidence adduced in the case and the court received assurances from each of them that nothing had occurred that would serve to prejudice them in arriving at a vedict.

The circumstances in the case before us do not come close to the inflammatory nature of the newspaper articles considered in *People v. Hryciuk,* 5 Ill.2d 176, 125 N.E.2d 61; *People v. Kenzik,* 9 Ill.2d 204, 137 N.E.2d 270; *People v. Murawski, supra; People v. Cain,* 36 Ill.2d 589, 224 N.E.2d 786; *Irwin v. Dowd,* 366 U.S. 310; *U.S. v. Accardo,* 298 F.2d 133; and *People v. Keegan,* 52 Ill.2d 147.

It should further be noted that in *Keegan* the defendant was charged with the crime of indecent liberties with a child. A newspaper article which was read by at least two jurors stated that the police had found color slides of nude and partially unclothed children in the defendant's home and that the evidence had been suppressed on motion of defendant's attorney. It also stated that the defendant was named in four similar complaints and that the defendant had requested that the circuit judge from Dixon not preside at his trial and that the judge who was presiding had denied defendant's motion to dismiss the case. The two jurors who read the articles were examined and stated that it would not influence them. The Supreme Court reversed the conviction in *Keegan* and made the observation that the offense with which the defendant was charged has been described by the court as similar in character to that of rape, because it is an accusation easily made, hard to be proved and harder to be defended by the party accused, though ever so innocent. This unique but unquestioned observation by our Supreme Court is not applicable to the charge of burglary such as we have in the case now before us.

In the cases of *Kenzik* and *Hryciuk* and *Murawski*, in which our Supreme Court found prejudice to exist, it should be noted that the information in the newspaper articles was attributable to the State's Attorney's office and there were facts which led the court to believe that a number of jurors had read the articles and had been influenced thereby.

The defendant further cites the case of *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, in support of his contention that his motion for mistrial should have been granted. Suffice to say that the trial which was had in the case of *Sheppard* was conducted in a carnival-like atmosphere which made the possibilities of prejudice so evident that there was a lack of due process of law afforded to the defendant. We do not have such a situation existing in the instant case and therefore are not presented with a constitutional question.

██ After examining the answers submitted by the jurors in the present case concerning the newspaper articles and in view of the admonishments given by the court to each juror we cannot say that the trial court abused its discretion in denying the defendant's motion for directed verdict. The many cases cited by the defendant have been analyzed and we conclude that they dealt with situations far different from that which is present in the case which we are now considering and are therefore not applicable. Unquestionably an accused is entitled to a fair trial and his rights must be zealously guarded by court and counsel, but a reversal is not indicated merely because the newspaper prints some statements derogatory to a defendant during the course of a trial and this is true even if the jurors have knowledge of such information. To warrant a reversal it must reasonably appear that the jury or at least some of them have been influenced or prejudiced to the extent that they cannot be fair and impartial. Such evidence is lacking in this case.

██ The defendant in his *pro se* brief raises a number of additional issues for our consideration. Shortly after the defendant's apprehension certain tools, *i.e.*, a hammer, pry bar, punch and chisel were found lying on the ground in the rear of Gene-O's Tavern near an air conditioning window unit. The defendant argues that the admission of the burglary tools into evidence was error because the evidence against him was circumstantial and the tools were not found in his possession. In the instant case Gene-O's Tavern was burglarized, an alarm was set off, police were dispatched to the scene and an officer saw someone exit from the building by crashing through a plate glass window. A hot pursuit ensued during which shots were fired and the defendant was apprehended as he was hiding in some bushes approximately a block and a quarter from the burglarized building. The entire chase was made in a well lighted

area and took less than 60 seconds from the time that the plate glass window was crashed to the time of the defendant's apprehension. Defendant in support of his contention relies on *People v. Fontana*, 356 Ill. 461, 190 N.E. 910, where evidence as to burglary tools found at scene of burglary was held inadmissible, in absence of evidence connecting defendants with them of proof they were ever in defendants' possession. In *Fontana* the only evidence connecting the defendants with burglary was circumstantial. The defendants were discovered on the roof of a building across the street from the burglarized premises. No one saw them enter or depart from the burglarized building. Such is not the situation in the case before us and we believe that the applicable law is set forth in a strikingly similar case. In *People v. Stanton*, 16 Ill.2d 459, 158 N.E.2d 47, our Supreme Court held that the burglary tools and other items were properly admitted into evidence when they were either found on the premises from which the defendant fled or at or near the place where apprehended after flight. (See also *People v. Santucci*, 24 Ill.2d 93, 180 N.E.2d 491.) The admission of the burglary tools into evidence in the present case was proper.

■■ It is also the defendant's contention that there was insufficient continuity of possession proven regarding certain items, to-wit, the burglary tools and certain clothing, and therefore the same were inadmissible as evidence. As to the burglary tools they were properly tagged and initialed by the investigating officers and then placed into an evidence locker at the police station after they had been found at the scene of the crime. There was ample testimony that there was unbroken supervision of the evidence locker until the time of the trial. There was no evidence that would in any way indicate the tools ever left the evidence locker until brought into court. We fail to find any missing link in the chain of possession of the burglary tools.

With respect to the defendant's clothing, his shirt, pants and shoes were separately tagged, wrapped, sealed and given to a Lt. Jackson of the police force by a Sgt. Barker, who received them from the defendant. Lt. Jackson testified that he received the clothing from officer Barker and turned it over to a Sgt. Smiley. Smiley testified that he received the clothing from Jackson and sent it to the Federal Bureau of Investigation. A Mr. Elmer Miller of the Federal Bureau of Investigation had testified at the defendant's first trial in regard to tests that had been made on the clothing, however, he did not testify at the second trial because he was unavailable due to a recent surgical operation. The People obtained the court's permission to introduce a transcript of the previous testimony into evidence but during the course of trial chose not to do so. There was no

testimony introduced as to the tests made by the Federal Bureau of Investigation so the only reason in introducing the clothing in evidence was for the purpose of identification rather than to establish that it contained or had contained glass particles from the window of Gene-O's Tavern. Sgt. Smiley testified that the articles of clothing which were introduced into evidence were the same articles he had mailed to the Federal Bureau of Investigation. An Officer Goldberry testified that he was the property officer in charge of the evidence locker and that he was present and unwrapped the package upon its return from the Federal Bureau of Investigation, but that he did not receive the package from the postman.

■■■ Based upon the above facts the defendant claims that insufficient continuity of possession of the articles was shown. If there be any missing links in the chain it can only be the testimony of the Federal Bureau of Investigation agent and the postman since there was no testimony from either of these individuals. We do not deem that the lack of such testimony constitutes reversible error for our Supreme Court in *People v. Judkins*, 10 Ill.2d 445, 140 N.E.2d 663, has said:

> "A rule that required not only continuity of possession be established, but also that there be positive identification by everyone concerned, would impose an unnecessary burden, while it would not assure a fairer trial to the accused."

(See also *People v. Collins*, 25 Ill.2d 302, 185 N.E.2d 147.) More precise proof of continuity of possession than that which we have in this case is not required.

■■ The defendant further assigns as error certain remarks made by the prosecutor during his closing argument. The prosecutor made several remarks that there was "no explanation" for the defendant's conduct. An examination of the record discloses that the complained of remarks were not found in the State's initial closing argument but in rebuttal and in reply to the closing argument made by the defendant. Without reciting final arguments it is clear to us that the defendant is taking remarks of the State out of context and attempting to characterize them as an attack upon his failure to testify. Such was not the case for the remarks of the State are not unlike those made in *Lipsey v. People*, 227 Ill. 364, 81 N.E. 348, which our Supreme Court held not to be error. See also *People v. Asey*, 85 Ill.App.2d 210, 229 N.E.2d 368.

■■ The defendant in his *pro se* brief assigns as error a number of matters which he failed to object to during the course of his trial and which he further failed to include in his motion for new trial. Such issues are not properly before this court on review. See Cleary Handbook of

Illinois Evidence 2d Ed., Chap. 7, Sec. 7.2, p. 99; Chap. 38, Sec. 116-1(c), Ill. Rev. Stat.; *People v. Irwin,* 32 Ill.2d 441, 207 N.E.2d 76.

● 11 The final error assigned by the defendant which we should consider in his contention that the sentence imposed upon him was greater than that which would have been recommended by the State in the event he had agreed to waive trial by jury and enter a plea of guilty. The defendant claims the State informed him if he entered a plea of guilty to the charge of burglary a sentence of not less than 4 nor more than 8 years would be recommended. The record is clear that the trial court was never at any time involved in the plea bargaining. The defendant chose to stand trial and after being found guilty received a sentence of not less than 4 nor more than 20 years in the penitentiary. It is his contention that he was prejudiced because he exercised his right to a trial by jury. Our court has recently considered this question in the case of *People v. Lairson,* 131 Ill.App.2d 612, 266 N.E.2d 735, in which we cited with approval *People v. Myers,* 44 Ill.2d 327, 255 N.E.2d 392, where the court held that the fact that the State's Attorney might have indicated he would suggest a shorter sentence on a plea of guilty did not amount to a deprival of due process of law when defendant demand a trial and the State's Attorney recommended a more severe penalty.

For the reasons set forth the judgment of the circuit court of Rock Island County and the sentence imposed thereon is hereby affirmed.

Judgment affirmed.

ALLOY, P. J., and DIXON, J., concur.

END OF VOLUME